**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

**Civil Action No. 09-cv-01186-JLK-KMT**

JULIAN FERGUSON, Individually and On Behalf of All Others Similarly Situated,

      Plaintiff,

   v.

OPPENHEIMERFUNDS, INC.;
OPPENHEIMER INTEGRITY FUNDS;
OPPENHEIMER CORE BOND FUND;
WILLIAM L. ARMSTRONG;
JOHN V. MURPHY;
BRIAN W. WIXTED;
ROBERT G. AVIS;
GEORGE C. BOWEN;
EDWARD L. CAMERON;
JON S. FOSSEL;
SAM FREEDMAN;
BEVERLY L. HAMILTON;
ROBERT J. MALONE;
F. WILLIAM MARSHALL, JR.; and
OPPENHEIMERFUNDS DISTRIBUTOR, INC.

      Defendants.

---

**MEMORANDUM OF LAW IN SUPPORT OF THE FERGUSON GROUP'S
MOTION FOR APPOINTMENT AS LEAD PLAINTIFF, APPROVAL OF LEAD
AND LIAISON COUNSEL AND APPOINTMENT OF INTERIM CLASS COUNSEL**

---

## I.   INTRODUCTION

Plaintiff Julian Ferguson and class member Peter T. Sauter, both of whom suffered losses as a result of their investments in the Oppenheimer Core Bond Fund, have formed the Ferguson Group to request appointment as lead plaintiff of a proposed class of investors who also purchased shares of the Fund on or after April 27, 2007.  The Ferguson Group moves the Court for (1) appointment as lead plaintiff under the Private Securities Litigation Reform Act of 1995 (PSLRA); (2) approval of its selection of Girard Gibbs LLP as lead counsel for the class and Sherman & Howard LLC as liaison counsel; and (3) appointment of Girard Gibbs LLP as interim class counsel under Federal Rule of Civil Procedure 23(g) for the claims under the Investment Company Act of 1940.

The Ferguson Group should be appointed lead plaintiff because it has complied with all of the PSLRA's requirements, has demonstrated the largest financial interest in this litigation, and otherwise meets the relevant requirements of Federal Rule of Civil Procedure 23.  The Group has also selected counsel experienced in the prosecution of securities class actions.  In addition, the Ferguson Group's selected counsel will fairly and adequately represent the proposed class in prosecuting the Investor Company Act claim, which is not subject to the PSLRA, and therefore should be appointed interim class counsel.

**D.C. Colo. L.R. 7.1(a) Certification:**   On June 16 and 17, 2009, counsel for the Ferguson Group met and conferred with counsel for all defendants about this motion.  None of the defendants takes a position on the motion, but all defendants reserve their right to respond.

## II.   FACTUAL BACKGROUND

Mr. Ferguson filed the only currently-pending complaint on behalf of the proposed class. (An earlier filed complaint, *Kenneth D. Smith v. Oppenheimer Funds, Inc., et al*, Civil Action No. 09-CV00929, was voluntary dismissed shortly after Mr. Ferguson filed his complaint.)  The

complaint alleges that defendants OppenheimerFunds, Inc., Oppenheimer Integrity Funds, the Fund, and the Fund's officers and trustees violated the Securities Act of 1933 and the Investment Company Act of 1940 by making false and misleading statements and omissions of material fact in the Fund's April 27, 2007 and April 29, 2008 Registration Statements on Form N-1A, Prospectuses and Statements of Additional Information filed with the Securities and Exchange Commission (collectively, the "Prospectuses").  (Complaint, ¶¶ 3, 47, 59-87.)

The complaint alleges that in the Prospectuses Defendants promoted the Fund as a conservative investment that was appropriate as "a long-term investment" and as "a part of a retirement plan portfolio."  (*Id.*, ¶¶ 4, 46, 52.)  The Prospectuses claimed the Fund sought "total return," or "income earned on the Fund's investments, plus capital appreciation, if any, which generally arises from decreases in interest rates, improving credit fundamentals for a particular sector or security, and managing pre-payment risks associated with mortgage-related securities as well as other techniques."  (*Id.*, ¶¶ 3, 48, 52.)  The Prospectuses also said that the Fund would achieve this objective by investing primarily in investment-grade bonds and United States government securities.  (*Id.*)

While promoting these conservative objectives, and without obtaining authorization from a majority share of the Fund's outstanding voting shareowners, the Defendants altered the Core Bond Fund's investment strategy and began to assume substantially greater levels of risk.  (*Id.*, ¶¶ 5, 49, 53, 86.)  The Fund dramatically increased its use of derivative instruments and purchases of highly volatile mortgage-related securities.  (*Id.*)  The Fund also increased its leverage up to 180% of net assets, borrowing money using the assets as collateral and then using the proceeds to pursue high risk derivative transactions.  (*Id.*, ¶ 6.)  The use of leverage greatly increased the Fund's potential loss by exposing it to the risk of loss on its new investments in

addition to loss associated with its existing asset bases.  (*Id.*)  The Fund concurrently increased its sales of credit default swaps, including those tied to companies like American International Group and Lehman Brothers Holdings Inc.  (*Id.*, ¶ 8.)

As a result of these undisclosed high-risk strategies, the Core Bond Fund lost more than 35 percent of its value in 2008 and another 10 percent in the first three months of 2009.  (*Id.*, ¶ 55.)

## III.   ARGUMENT

### A.    The Ferguson Group Should Be Appointed Lead Plaintiff

The PSLRA establishes the procedure that governs the appointment of a lead plaintiff in "each private action arising under the [Securities Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 77z-1(a)(1) and (a)(3)(B)(i).  The plaintiff who files the initial action must publish a notice to the class within 20 days of filing the complaint informing class members of their right to file a motion for appointment as lead plaintiff.  15 U.S.C. § 77z-1(a)(3)(A)(i).  Within 60 days of publishing the notice, any person or group of persons who are members of the proposed class may apply to the court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action.  15 U.S.C. § 77z-1(a)(3)(A) and (B).

The PSLRA also provides that, within 90 days after publication of the notice, the Court shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class that the court determines to be "most capable of adequately representing the interests of class members."   15 U.S.C. § 77z-1(a)(3)(B)(i).   In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate
> plaintiff in any private action arising under this Act is the person or

group of persons that:

(aa) has either filed the complaint or made a motion in response to a notice . . .

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 77z-1(a)(3)(B)(iii).  *See In re Ribozyme Pharmaceuticals, Inc. Sec. Litig.*, 192 F.R.D. 656, 657-58 (D. Colo. 2000).

### 1. The Ferguson Group Has Complied With the PSLRA

Notice of the filing of the initial action was published on April 23, 2009, over *Business Wire*, a widely circulated national business-oriented publication.  Declaration of Jonathan K. Levine, Ex. A.  The time period in which class members may move to be appointed lead plaintiff in this case therefore expires on June 22, 2009.  15 U.S.C. § 77z-1(a)(3)(A) and (B).  The Ferguson Group has timely filed this motion, and its members have reviewed the complaint, are willing to serve as lead plaintiff and represent the class, and have selected and retained experienced and competent counsel.  *See* Levine Decl., Exs. C & D (Ferguson Group members' certifications); E (Declaration of Julian Ferguson); F (Declaration of Peter T. Sauter); H (Girard Gibbs firm resume); I (Sherman & Howard firm resume).  Accordingly, the Ferguson Group has complied with the PSLRA and the Court should approve its application for appointment as lead plaintiff and its selection of counsel to represent the Class.

### 2. The Ferguson Group Has the Largest Financial Interest in the Relief Sought By the Class

The members of the Ferguson Group have suffered losses of $19,528.86 as a result Defendants' violations of the Securities Act.  *See* Levine Decl., Ex. G (analysis of Ferguson

Group's transactions). To its knowledge, the Ferguson Group has the largest financial interest in the relief sought in the outcome of this litigation. *See Ribozyme*, 192 F.R.D. at 659-61.

### 3.    The Ferguson Group Is Qualified Under Rule 23

The PSLRA also requires that the lead plaintiff "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 77z-1(a)(3)(B). This inquiry is focused on the typicality and adequacy prerequisites to class certification. *See, e.g., Ribozyme*, 192 F.R.D. at 658. The Ferguson Group satisfies both of these requirements.

"Typicality exists where the 'injury and the conduct are sufficiently similar.'" *Id.* (quoting *Bayles v. American Medical Response of Colorado, Inc.,* 950 F. Supp. 1053, 1060 (D.Colo. 1996)). "[D]iffering fact situations of class members do not defeat typicality under Rule 23(a)(3) so long as the claims of the class representative and class members are based upon the same legal or remedial theory." *Id.* (quoting *Bayles*, 950 F. Supp. at 1060). The Ferguson Group satisfies the typicality requirement because both members purchased Oppenheimer Core Bond Fund shares during the relevant time period at prices that were artificially inflated by the false and misleading statements and omissions of material fact in the offerings, and suffered damages as a result. *See id.*

The Ferguson Group also satisfies the adequacy requirement. "The PSLRA directs courts to limit its inquiry regarding adequacy to the existence of any conflicts between the interests of the proposed lead plaintiffs and the members of the class." *Id.* at 659. "The standard for adequacy of representation under Rule 23(a)(4) is met by: (1) the absence of potential conflict between the named plaintiffs and the class members and (2) that counsel chosen by the representative parties is qualified, experienced and able to vigorously conduct the proposed litigation." *Id.* There is no antagonism between the Ferguson Group's interest and the interests of other members of the proposed class. The Ferguson Group's members have also

demonstrated their adequacy as class representatives by signing sworn certifications and declarations filed with the Court that affirm their willingness to serve as and assume the responsibilities of class representatives. *See* Levine Decl., Ex. C & D (Ferguson Group members' certifications); E (Ferguson Decl.); F (Sauter Decl). The Ferguson Group has also selected counsel highly experienced in prosecuting securities class actions. Levine Decl., Ex. H (Girard Gibbs firm resume); Ex. I (Sherman & Howard firm resume).

Finally, the Ferguson Group will act cohesively in representing the class and will affirmatively control the litigation. The PSLRA "explicitly contemplates that a 'member or members of the purported plaintiff class,' including a 'group of persons,' may be appointed lead plaintiff in a private securities fraud class action." *In re Level 3 Communs., Inc. Sec. Litig.*, 2009 U.S. Dist. LEXIS 44706, at *10 (D. Colo. May 4, 2009) (quoting 15 U.S.C. § 78u-4(a)(3)(B)). A small group of previously unrelated class members may be appointed lead plaintiff if the group has "submitted evidence demonstrating a likelihood that its constituents will act in a cohesive fashion and affirmatively control this litigation and their shared counsel." *Id.* at *11, 14.

The Ferguson Group fulfills these criteria. The members of the Ferguson Group share common views of the goals and management of the litigation and intend to work together to represent the class and prosecute the case. Ferguson Dec., ¶ 3; Sauter Dec., ¶ 3. The Ferguson Group has therefore authorized its counsel to ask the Court to appoint the Group as lead plaintiff. Ferguson Dec., ¶ 8; Sauter Dec., ¶ 8. The Group members have established procedures to communicate with one another and with their counsel, and will make decisions by consensus. Ferguson Dec., ¶ 4; Sauter Dec., ¶ 4. The Group will require regular progress reports about the litigation from counsel and intends to hold periodic conferences with counsel to be apprised of

case developments and to provide direction to counsel on matters of importance to the litigation. Ferguson Dec., ¶ 4; Sauter Dec., ¶ 4.  Mr. Ferguson's and Mr. Sauter's declarations confirm that they will work together to effectively and actively represent the proposed the class, and the Ferguson Group is therefore ideally suited to serve as lead plaintiff.

### B. The Court Should Approve the Ferguson Group's Choice of Lead Counsel and Liaison Counsel

The PSLRA vests authority in the lead plaintiff to select and retain counsel to represent the class, subject to court approval.  15 U.S.C. § 77z-1(a)(3)(B)(v).  The Court should not disturb lead plaintiff's choice of counsel unless necessary to "protect the interests of the class." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II)(aa).  The Ferguson Group has selected Girard Gibbs as its counsel, and requests that the Court approve Girard Gibbs as lead counsel.  *See* Ferguson Dec., ¶ 6; Sauter Dec., ¶ 6.  As shown by the firm's resume, Girard Gibbs is experienced in litigating securities class and non-class actions and has successfully prosecuted numerous complex class cases on behalf of injured investors.  *See* Levine Decl., Ex. H (Girard Gibbs firm resume). Sherman & Howard is an established Colorado firm with broad experience in securities litigation.  *Id.*, Ex. I (Sherman & Howard firm resume).  Accordingly, the Ferguson Group asks the Court to approve its selection of Girard Gibbs as lead counsel and Sherman & Howard as liaison counsel for the proposed class.

### C. The Court Should Appoint The Ferguson Group's Counsel As Interim Class Counsel Under Rule 23(g) for the Non-PSLRA Claims

In addition to the Securities Act claims that are covered by the PSLRA, the complaint alleges that Defendants violated Section 13(a) of the Investment Company Act, a claim that is not subject to the PSLRA's lead plaintiff procedures.  Federal Rule of Civil Procedure 23(g)(3) authorizes the Court to designate counsel to act on behalf of the proposed class before determining whether to certify these claims as a class action.  Rule 23(g) requires the Court to

assess whether counsel seeking appointment will fairly and adequately represent the interests of the proposed class, considering "counsel's work in identifying or investigating the potential claims, counsel's experience in handling complex class actions, counsel's knowledge of the applicable law, and the resources that counsel will bring to bear in representing the class." *See Ehler v. IPEX, Inc.*, 2009 U.S. Dist. LEXIS 45089, at *4-5 (D. Colo. May 15, 2009).

Consideration of these factors confirms that Girard Gibbs will fairly and adequately represent the class as interim class counsel.

### 1. Girard Gibbs Has Done Substantial Work on Behalf of the Class to Identify and Investigate Potential Claims

Girard Gibbs has done extensive work in identifying and investigating the claims in this action, and is prepared to continue that effort in the context of the litigation. Among other things, Girard Gibbs's investigation included gathering and reviewing relevant documents from available public sources (including public filings, news articles and other materials), interviews of potential witnesses about their knowledge of the issues in the case, and discussions with potential class members about the terms and conditions of their purchases of their shares of the Fund. Girard Gibbs has taken the initiative in investigating the case and developing theories of liability, demonstrating the firm's qualification to fulfill a leadership role in this litigation.

### 2. Girard Gibbs Is Experienced in Handling Class Actions, Complex Litigation and the Types of Claims in this Action

As set forth in its firm resume, Girard Gibbs has extensive experience in prosecuting class actions in general, and has successfully represented investors pursuing the same types of claims asserted in this case. The firm has extensive knowledge of the applicable law and has litigated class action cases in numerous state and federal courts across the country. Levine Decl., Ex. H (Girard Gibbs firm resume).

### 3. Girard Gibbs Is Prepared to Commit Significant Resources to Litigating this Case

Girard Gibbs is prepared to devote significant human and financial resources to representing the interests of the proposed class. The firm has multiple lawyers available to work on this case and the firm will devote the resources required to take this case through pre-trial, trial and any subsequent appeal, if necessary. In addition, Girard Gibbs has the financial resources to fund the case, including expert expenses, even if the case takes several years to resolve. The firm has demonstrated its willingness to fund these types of cases in the past, and will do so here as well.

## IV. CONCLUSION

The Ferguson Group respectfully requests that the Court grant its motion to (1) appoint the Ferguson Group as lead plaintiff under 15 U.S.C. § 77z-1(a)(3)(B); (2) approve the Ferguson Group's selection of Girard Gibbs as lead plaintiff's counsel and Sherman & Howard as liaison counsel for the Securities Act claims; and (3) appoint Girard Gibbs to serve as interim class counsel under Rule 23(g) for the Investment Company Act claim that is not subject to the PSLRA.

DATED: June 22, 2009                    Respectfully submitted,

                                        **SHERMAN & HOWARD LLC**


                                        By: _s/ *Gordon W. Netzorg*_____

                                        Peter G. Koclanes
                                        633 Seventeenth Street, Suite 3000
                                        Denver, CO 80202-3622
                                        Telephone: (303)297-2900
                                        Facsimile: (303)298-0940

**GIRARD GIBBS LLP**


By:   s/ *Jonathan K. Levine*
           Jonathan K. Levine

Daniel C. Girard
Regina A. Sandler
Christina H.C. Sharp
601 California Street, 14th Floor
San Francisco, CA  94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846

*Counsel for Individual and*
*Representative Plaintiff Julian Ferguson*

## CERTIFICATE OF SERVICE

I Jonathan K. Levine hereby certify that on June 22, 2009, I electronically filed a true and correct copy of the foregoing **MEMORANDUM OF LAW IN SUPPORT OF THE FERGUSON GROUP'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF, APPROVAL OF LEAD AND LIAISON COUNSEL AND APPOINTMENT OF INTERIM CLASS COUNSEL** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses:

| | |
|---|---|
| Gordon W. Netzorg<br>Peter G. Koclanes<br>**Sherman & Howard, LLC**<br>633 17th Street, Suite 3000<br>Denver, CO  80202<br>gnetzorg@shermanhoward.com<br>pkoclanes@shermanhoward.com | Stephanie E. Dunn<br>**Perkins Coie LLP**<br>1899 Wynkoop Street, Suite 700<br>Denver, Colorado  20202<br>sdunn@perkinscoie.com |
| Separately emailed to Magistrate Judge<br>Kathleen M. Tafoya<br>Tafoya_Chambers@cod.uscourts.gov | Peter G. Rush<br>**K&L Gates LLP-Chicago**<br>70 West Madison Street , #3100<br>Chicago , IL 60602-4207<br>312-372-1121<br>Fax: 312-827-8005<br>Email: peter.rush@klgates.com |

In addition, I hereby certify that I caused courtesy copies of the foregoing to be served upon the following parties by electronic mail on June 22, 2009.

| | |
|---|---|
| Steven J. Toll<br>Daniel S. Sommers<br>S. Douglas Bunch<br>**Cohen Milstein Sellers & Toll PLLC**<br>1100 New York Avenue, N.W.<br>Suite 500, West Tower<br>Washington, D.C. 20006<br>stoll@cohenmilstein.com<br>dsommers@cohenmilstein.com | William K. Dodds<br>**Dechert LLP**<br>1095 Avenue of the Americas<br>New York, New York  10036<br>William.dodds@dechert.com |

| | |
|---|---|
| Robert Bruce Carey<br>**The Carey Law Firm**<br>2301 East Pikes Peak Avenue<br>Colorado Springs, CO  80909<br>rcarey@careylaw.com | Jeffrey Allen Berens<br>**Dyer & Berens, LLP**<br>682 Grant Street<br>Denver, CO  80203<br>jeff@dyerberens.com |
| Kip B. Shuman<br>Rustey E. Glenn<br>**Shuman Law Firm**<br>885 Arapahoe Avenue<br>Boulder, Colorado  80302<br>kip@shumanlawfirm.com<br>rusty@shumanlawfirm.com | Dale R. Harris<br>**Davis Graham & Stubbs, LLP – Denver**<br>1550 17th Street, #500<br>Denver, Coloardo  20202<br>Dale.harris@dgslaw.com |
| Christopher J. Keller<br>**Labaton Sucharow LLP**<br>140 Broadway, 23rd Floor<br>New York, New York  10005<br>ckeller@labaton.com | Timothy Beyer<br>Michael Byrne<br>**Brownstein Hyatt Farber Schieck, LLP**<br>410 17th Street, #2200<br>Denver, Colorado  20202<br>tbeyer@bhfs.com<br>mbyrne@bhfs.com |
| Andrei Rado<br>**Milberg, LLP**<br>One Pennsylvania Plaza, 49th Floor<br>New York, New York  10119<br>arado@milberg.com | Jeffrey S. Abraham<br>**Abraham & Paskowtiz**<br>One Penn Plaza #1910<br>New York, New York  10119<br>jabraham@aftlaw.com |
| Kirk Douglas Tresemer<br>Darren A. Natvig<br>**Irwin & Boesen, P.C.**<br>4100 E. Mississippi Avenue, 19th Floor<br>Denver, Colorado  80246<br>ktresemer@irwin-boesen.com<br>dnatvig@irwin-boesen.com | Charles Walter Lilley<br>Karen Jean Cody-Hopkins<br>**Charles Lilley & Associates, P.C.**<br>1600 Stout Street, #1100<br>Denver, Colorado  80202<br>clilley@lilleylaw.com<br>kjch@lilleylaw.com |
| Reed R. Kathrein<br>**Hagens Berman Sobol Shapiro, LLP – Berkeley**<br>715 Hearst Avenue, #202<br>Berkeley, California  94710<br>reed@hbsslaw.com | |

 LexisNexis·

LEXSEE 2009 U.S. DIST. LEXIS 44706

**In re LEVEL 3 COMMUNICATIONS, INC. SECURITIES LITIGATION**

**Civil Action No. 09-cv-00200-PAB-CBSConsolidated withCivil Action Nos. 09-cv-00215-PAB-CBS,09-cv-00296-PAB-CBSand09-cv-00606-PAB-CBS**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO**

*2009 U.S. Dist. LEXIS 44706*

**May 4, 2009, Decided
May 4, 2009, Filed**

**COUNSEL:** [*1] For Adam Skaggs, Individually and On Behalf of All Others Similarly Situated, (1:09-cv-00200-PAB-CBS), Plaintiff: Kip Brian Shuman, Rusty Evan Glenn, LEAD ATTORNEYS, Shuman Law Firm, The, Boulder, CO.

For William A. Poppo, (Lead), (1:09-cv-00200-PAB-CBS), Plaintiff: Jeffrey Allen Berens, Dyer & Berens, LLP, Denver, CO; Julie A. Kearns, Trig Randall Smith, Coughlin Stoia Geller Rudman & Robbins, LLP-San Diego, San Diego, CA.

For John S. Burke, Individually and on behalf of all others similarly situated, (1:09-cv-00200-PAB-CBS), Consol Plaintiff: Jeffrey Allen Berens, Robert J. Dyer, III, LEAD ATTORNEYS, Dyer & Berens, LLP, Denver, CO; Julie A. Kearns, Trig Randall Smith, Coughlin Stoia Geller Rudman & Robbins, LLP-San Diego, San Diego, CA.

For Marilyn A. Ides, Individually and on behalf of all others similarly situated, Jennifer Ross, (1:09-cv-00200-PAB-CBS), Consol Plaintiffs: Kip Brian Shuman, Rusty Evan Glenn, LEAD ATTORNEYS, Shuman Law Firm, The, Boulder, CO.

For Level 3 Communications, Inc., Kevin J. O'Hara, James Q. Crowe, Sunit S. Patel, Eric J. Mortensen, (1:09-cv-00200-PAB-CBS), Defendants: Lon Angelo Licata, LEAD ATTORNEY,

Level 3 Communications, LLC, Broomfield, CO; Brian Neil [*2] Hoffman, Steven M. Kaufmann, Morrison & Foerster, LLP-Denver, Denver, CO.

For Carl Kiefer, Sr., Carl Kiefer, Jr., (1:09-cv-00200-PAB-CBS), Interested Parties: David P. Hersh, Seth Alan Katz, Burg, Simpson, Eldredge, Hersh & Jardine, PC-Englewood, Englewood, CO.

For Southeastern Pennsylvania Transportation Authority, (1:09-cv-00200-PAB-CBS), Interested Partie: Kip Brian Shuman, Rusty Evan Glenn, Shuman Law Firm, The, Boulder, CO.

For Dennis Elko, Douglas B. Nedry, (1:09-cv-00200-PAB-CBS), Interested Parties: Kip Brian Shuman, Rusty Evan Glenn, LEAD ATTORNEYS, Shuman Law Firm, The, Boulder, CO.

For John S. Burke, Individually and On Behalf of All Others Similarly Situated, (1:09-cv-00215-PAB-CBS), Plaintiff: Jeffrey Allen Berens, Robert J. Dyer, III, LEAD ATTORNEYS, Dyer & Berens, LLP, Denver, CO.

For Marilyn A. Ides, Individually and On Behalf of All Others Similarly Situated, (1:09-cv-00296-PAB-CBS), Plaintiff: Kip Brian Shuman, Rusty Evan Glenn, LEAD ATTORNEYS, Shuman Law Firm, The, Boulder, CO.

For Level 3 Communications, Inc., (1:09-cv-00296-PAB-CBS), Defendant: Lon Angelo Licata, LEAD ATTORNEY, Level 3 Communications, LLC, Broomfield, CO.

For Jennifer Ross, individually  [*3] and on behalf of all others similarly situated, (1:09-cv-00606-PAB-CBS), Plaintiff: Kip Brian Shuman, Rusty Evan Glenn, LEAD ATTORNEYS, Shuman Law Firm, The, Boulder, CO.

**JUDGES:** PHILIP A. BRIMMER, United States District Judge.

**OPINION BY:** PHILIP A. BRIMMER

**OPINION**

**ORDER APPOINTING LEAD PLAINTIFF**

This matter is before the Court on cross motions for appointment as lead plaintiff and approval of selection of lead counsel filed by: William A. Poppo [Docket No. 31]; Southeastern Pennsylvania Transportation Authority ("SEPTA"), Dennis Elko, and Douglas B. Nedry (collectively, the "Level 3 Plaintiffs Group") [Docket No. 32]; and Carl Kiefer Jr. and Carl Kiefer Sr. (collectively, the "Kiefer Family") [Docket No. 36].

**I. BACKGROUND**

This is a consolidated, uncertified class action alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), *15 U.S.C. §§ 78j(b) & 78t(a)*, and *Rule 10b-5* promulgated by the Securities and Exchange Commission, *17 C.F.R. § 240.10b-5*. No consolidated complaint will be filed in this action until after lead plaintiff and lead counsel are appointed by the Court pursuant to the Private Securities Litigation Reform Act (the "Reform Act"). *See* April 6, 2009  [*4] Minute Order [Docket No. 43]. Absent such a unified pleading, and because the allegations in each of the consolidated complaints are substantially similar, I refer to those allegations in the first complaint submitted, which was filed by named plaintiff Adam Skaggs on February 2, 2009 [Docket No. 1], for relevant factual allegations. The complaint alleges that defendant Level 3 Communi-

cations, Inc. ("Level 3") acquired a number of smaller communications companies between 2005 and 2007. The complaint asserts that, among other things, Level 3 had difficulty integrating these companies, leading to operational difficulties that ultimately hindered its revenue growth. Despite knowledge of the detrimental impact of such acquisitions on Level 3's business, the complaint maintains, defendants played a role in disseminating overly optimistic or misleading public disclosures between February and October 2007. The complaint alleges that such representations or omissions caused the stock of Level 3 to trade at inflated prices during the relevant class period, only to plummet upon disclosure of the full extent of Level 3's acquisition-related troubles on October 23, 2007.

Pursuant to the Reform  [*5] Act, *15 U.S.C. § 78u-4(a)(3)(A)*, counsel for named plaintiff Adam Skaggs issued a notice of this putative class action through GlobeNewswire, a widely circulated national business-oriented publication. *See* Level 3 Plaintiffs Group Mot. for Appointment as Lead Pl. & Approval of Lead Pl.'s Selection of Co-Lead Counsel & Liaison Counsel ("Level 3 Pls. Group Mot."), Ex. A. The Reform Act requires any motions for appointment as lead plaintiff to be filed within sixty days of such notice. *15 U.S.C. § 78u-4(a)(3)(A)(i)(II)*. Mr. Poppo, the Level 3 Plaintiffs Group, and the Kiefer Family each timely moved to be appointed as lead plaintiff. For the following reasons, the Court grants William A. Poppo's motion for appointment as lead plaintiff, defers approval of lead counsel, and denies the other motions.

**II. ANALYSIS**

**A. Standard of Review**

The Reform Act requires that, within ninety days of the publication of a qualifying notice of the pendency of the action, the Court must consider any motion made by a purported class member in response to the notice and "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately  [*6] representing the interests of class members." *15 U.S.C. § 78u-4(a)(3)(B)(i)*. The Re-

form Act establishes a rebuttable presumption that the "most adequate plaintiff" is

> the person or group of persons that-- (aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i); (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) other- wise satisfies the requirements of Rule 23 of the Federal Rules of Civil Pro- cedure.

*Id. § 78u-4(a)(3)(B)(iii)(I)(aa)-(cc).* With respect to the Reform Act's requirement that a potential lead plaintiff "otherwise satisfy *Rule 23*," the Court con- siders only the adequacy and typicality require- ments of *Rule 23(a)* at this stage of the proceedings. *In re Ribozyme Pharmaceuticals, Inc. Sec. Litig., 192 F.R.D. 656, 658 (D. Colo. 2000).* The lead plaintiff presumption may be rebutted "only upon proof by a member of the purported plaintiff class" that the presumptive lead plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id. § 78u-4(a)(3)(B)(iii)(II)(aa)- (bb).* [*7] Once the Court selects the most adequate lead plaintiff, the Reform Act instructs that such plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class."

## B. Appointment of Lead Plaintiff

### 1. Financial Interest

The Reform Act does not define "financial in- terest" or offer guidance as to how a district court should discern which plaintiff has the largest finan- cial interest in the litigation. *See In re Crocs, Inc. Sec. Litig., No. 07-cv-2351-REB-KLM, 2008 U.S. Dist. LEXIS 87524, 2008 WL 4298316, *2 (D. Colo. Sept. 17, 2008).* Regardless of the method applied to measure financial interest, however, none of the movants contests that the Level 3 Plaintiffs Group has, in the aggregate, the largest financial interest. *See Kiefer Family's Resp. [Docket No. 45] at 2; William A. Poppo's Opp. [Docket No. 49] at 1.* The Level 3 Plaintiffs Group alleged in its motion that it

suffered an aggregate loss of approximately $ 2.5 million. Level 3 Pls. Group Mot. at 7 & Ex. C.

Mr. Poppo, while conceding the Level 3 Plain- tiffs Group's larger financial interest under any sce- nario, raises two issues related to the losses claimed by the Level 3 Plaintiffs Group. First, Mr. Poppo contends that certain   [*8] of SEPTA's alleged losses cannot be tallied because SEPTA sold a sig- nificant portion of its holdings in Level 3 stock prior to the first negative disclosure issued by the company, which dates to July 26, 2007 according to the complaint. William A. Poppo's Opp. at 9 (citing Skaggs Compl. P 26). The Court finds this objec- tion well founded. It would be difficult at best for SEPTA to prove loss causation with respect to shares it sold "before the relevant truth begins to leak out" because the Supreme Court has held that in such cases, "the misrepresentation will not have led to any loss." *Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 342, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005); see also Ruland v. InfoSonics Corp., No. 06-cv-1231, 2006 U.S. Dist. LEXIS 79144, 2006 WL 3746716, *5 (S.D. Cal. Oct. 23, 2006)* (declining to consider losses attributable to pre-disclosure transactions in lead plaintiff analy- sis). Mr. Poppo also takes issue with the losses that the Level 3 Plaintiffs Group attributes to shares ac- quired by Dennis Elko in the 2007 merger by which Level 3 acquired Broadwing Corporation, claiming that such shares were not "purchased" within the meaning of the class definition included in the complaints filed to date. *See William A. Poppo's Opp.* at 10-12.

Even [*9] subtracting any claimed losses of the Level 3 Plaintiffs Group resulting from stock SEPTA sold prior to July 26, 2009 and from shares Mr. Elko acquired pursuant to the Broadwing merger, the Level 3 Plaintiffs Group still appears to have the greatest financial interest. The revised losses claimed by the Level 3 Plaintiffs Group would be approximately $ 2.4 million. *See Level 3 Pls. Group Reply [Docket No. 51] at 6, 9* (stating new alleged losses for Mr. Elko and SEPTA in re- sponse to Mr. Poppo's opposition). Mr. Poppo's claimed losses of $ 571,000 makes his financial interest the second largest, whereas the Kiefer Fam- ily claims losses of $ 137,051. Given that neither Mr. Poppo nor the Kiefer Family contests this con- clusion, the Court finds the Level 3 Plaintiffs Group

to have the largest financial interest within the meaning of the Reform Act. The Court next addresses whether the Level 3 Plaintiffs Group otherwise satisfies *Rule 23* and if it would fairly and adequately represent the proposed class. Because I find that the Level 3 Plaintiffs Group would not fairly and adequately represent the proposed class, I need not inquire into whether it is subject to unique defenses.

### 2. Presumptive [*10] Lead Plaintiff

#### i. Level 3 Plaintiffs Group

Because the Level 3 Plaintiffs Group has the largest financial interest and has suffered collective losses due to its significant holdings in Level 3 stock during the class period, it appears to be, at first blush, the presumptive lead plaintiff. However, the Court declines to appoint the Level 3 Plaintiffs Group as lead plaintiff because it is not a proper grouping under the Reform Act.

The Reform Act explicitly contemplates that a "member or members of the purported plaintiff class," including a "group of persons," may be appointed lead plaintiff in a private securities fraud class action. *15 U.S.C. § 78u-4(a)(3)(B).* Courts of this District have appointed groups to serve as lead plaintiff in such actions. *See In re Ribozyme, 192 F.R.D. at 657, 662* (all movants were groups); *In re Crocs, 2008 U.S. Dist. LEXIS 87524, 2008 WL 4298316, *5.* In certain circumstances, courts have found no impropriety with the appointment of a group of previously unrelated plaintiffs as plaintiffs. *See, e.g., In re Baan Co. Sec. Litig., 186 F.R.D. 214, 217 (D.D.C. 1999); In re Cendant Corp. Litigation, 264 F.3d 201, 266 (3d Cir. 2001)* (disagreeing with notion that a group of previously related [*11] entities may never serve as lead plaintiff).

However, courts in this District have cautioned, as have many courts throughout the country, that groups comprised of individuals and entities having no pre-litigation relationship or identifiable cohesiveness aside from their alleged losses and shared counsel should not be appointed lead plaintiff under the Reform Act. *See In re Crocs, 2008 U.S. Dist. LEXIS 87524, 2008 WL 4298316, *3 n. 5* (stating that *§ 78u-4(a)(3)(B)(iii)(I)* "allows a small group of *related* investors to consolidate their individual

losses in seeking designation as lead plaintiff") (emphasis added); *see also Eichenholtz v. Verifone Holdings, Inc., No. C 07-06140, 2008 U.S. Dist. LEXIS 64633, 2008 WL 3925289, *7 (N.D. Cal. Aug. 22, 2008)* ("courts have uniformly refused to appoint as lead plaintiff groups of unrelated individuals, brought together for the sole purpose of aggregating their claims in an effort to become the presumptive lead plaintiff" (quoting *In re Gemstar-TV Guide Int'l, Inc. Secs. Litig., 209 F.R.D. 447, 451 (C.D. Cal. 2002))); In re Razorfish, Inc. Sec. Litig., 143 F. Supp. 2d 304, 308-09 (S.D.N.Y. 2001)* (refusing to appoint as lead plaintiff group that court determined to be "an artifice cobbled together by cooperating [*12] counsel for the obvious purpose of creating a large enough grouping of investors to qualify as 'lead plaintiff,' which can then select the equally artificial grouping of counsel as 'lead counsel'"); *In re Telxon Corp. Sec. Litig., 67 F. Supp. 2d 803, 815 (N.D. Ohio 1999)* (holding that allowing random amalgamation of plaintiffs to serve as lead plaintiff would be inconsistent with the language, context, overall scheme, and purpose of the Reform Act). These courts reason that "[o]ne of the principal legislative purposes of the PSLRA was to prevent lawyer-driven litigation," which purpose is undermined by allowing "lawyers to designate unrelated plaintiffs as a 'group' and aggregate their financial stakes" because such a practice "would allow and encourage lawyers to direct the litigation." *In re Donnkenny Inc. Sec. Litig., 171 F.R.D. 156, 157-58 (S.D.N.Y. 1997); cf.* H.R. Conf. Rep. No. 104-369, at 35 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 734 ("the Conference Committee expects that the plaintiff will choose counsel rather than . . . counsel choosing the plaintiff"); S. Rep. No. 104-98, at 10 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 689 ("The Committee believes that the lead plaintiff [*13] -- not lawyers -- should drive the litigation"). As explained by the Third Circuit in *In re Cendant Corp. Litigation, 264 F.3d at 267,* where circumstances indicate that a movant "group" was created by the efforts of lawyers in an attempt to secure appointment as lead counsel, such group is unlikely to monitor counsel effectively and, thus, usually will not meet the requirement of *§ 78u-4(a)(3)(B)(iii)(II)(aa)* that the proposed lead plaintiff "fairly and adequately protect the interests of the class."

Turning to the record before the Court, the Level 3 Plaintiffs Group has not submitted evidence demonstrating a likelihood that its constituents will act in a cohesive fashion and affirmatively control this litigation and their shared counsel. The Level 3 Plaintiffs Group did not append any materials to its motion that show that SEPTA, Mr. Elko, and Mr. Nedry were even aware of one another prior to their interaction with their joint counsel, let alone how they are prepared to work together to manage this litigation on behalf of the proposed class. Instead, the group submitted essentially boilerplate certifications discussing their stock purchases and alleged losses, which are required of **[*14]** every named plaintiff filing a private securities fraud action pursuant to the Reform Act. *See 15 U.S.C. § 78u-4(a)(2)(A).* The Level 3 Plaintiffs Group failed to cure this deficiency in its response brief, again focusing on its members' collective financial interest and the qualifications of their chosen counsel rather than revealing any information about the cohesiveness of the group or its plan to cooperatively manage this lawsuit and the members' counsel.

Only at the final stage of briefing did the Level 3 Plaintiffs Group submit a joint declaration. *See* Decl. of Michael Goldberg [Docket No. 52], Ex. A ("Joint Decl."). Even if it is proper to consider this joint declaration, *see Pippin v. Burlington Resources Oil & Gas Co., 440 F.3d 1186, 1191-92 & n.5 (10th Cir. 2006)* (holding that district court did not err by considering exhibits attached for the first time to reply brief where the nonmovant did not object to such exhibits prior to the court's resolution of the motion and did not request leave to file a surreply), the joint declaration does not satisfy the Level 3 Plaintiffs Group's burden to show that it would be proper under the Reform Act to designate it as lead plaintiff. *See* **[*15]** *In re Waste Management, Inc. Securities Litigation 128 F. Supp. 2d 401, 413 (S.D.Tex. 2000)* ("The burden is on those seeking to aggregate to demonstrate the cohesiveness of their purported 'group'"). Reviewing the joint declaration, the Court is left with little additional understanding of, for example, how the group was formed; how its members would function collectively; how potential disputes among the members or counsel would be resolved; and the mechanism by which the group members and counsel would communicate with one another about the litigation. *See In re Baan, 186 F.R.D. at 225* (memo-

randum submitted by amicus curiae Securities and Exchange Commission discussing information that should be provided by group seeking lead plaintiff designation to facilitate court's analysis). The joint declaration states that the members of the Level 3 Plaintiffs Group have conferred with one another about this litigation, including discovery issues that may arise, and have "established procedures should disagreements arise between us." Joint Decl. P 9. The Level 3 Plaintiffs Group declares that it has "substantial financial interests in the litigation," and "opted to work together to prosecute **[*16]** this action" believing that its "collective resources, investment experience, and diversity" will benefit the proposed class. *Id.* PP 7-8. However, the joint declaration does not articulate any actual mechanisms for cooperation, dispute resolution, or communication among the group members and counsel. In short, the joint declaration offers little substance to inform the Court of why the Level 3 Plaintiffs Group is a group in the first place, aside from the obvious motive to aggregate the greatest financial interest among any movant. The record before me is therefore insufficient to justify appointing this purported group as lead plaintiff. *See In re Eichenholtz, 2008 U.S. Dist. LEXIS 64633, 2008 WL 3925289, *9* (holding that statements by group that it was comprised of "sophisticated investors" with "significant interest in the outcome" who were "committed to working closely with class counsel," but which failed to describe actual mechanisms for cooperation, decision-making or the nature of any preexisting relationship were insufficient to warrant appointment of group as lead plaintiff).

While Mr. Elko and Mr. Nedry of the Level 3 Plaintiffs Group each claim a larger individual loss from shares they obtained during **[*17]** the class period (from October 2006 to October 2007) than Mr. Poppo and the Kiefer Family, the Level 3 Plaintiffs Group did not request that any of its constituents be appointed as lead plaintiff individually in the event the Court declined to appoint the group. Therefore, neither Mr. Elko nor Mr. Nedry satisfies the prerequisite of the Reform Act's lead plaintiff provision that the person "made a motion" in response to the notice of the putative class action. *15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa).* Other courts confronted by a request to appoint only one individual out of an otherwise inadequate group in order to salvage lead plaintiff status have declined to

do so and, instead, considered the qualifications of the movant with the next largest financial interest. *See, e.g., Tsirekidze v. Syntax-Brillian Corp.*, No. CV-07-2204, 2008 WL 942273, *4 (D. Ariz. Apr. 7, 2008) (declining to consider individual constituent of group as lead plaintiff candidate because the group "moved for lead plaintiff as a group and will be evaluated as such"); *Ross v. Abercrombie & Fitch Co.*, No. 2:05-CV-819, 2007 U.S. Dist. LEXIS 24903, 2007 WL 895073, *4 (S.D. Ohio Mar. 22, 2007)*. My inquiry thus turns to whether Mr. Poppo, who has **[\*18]** the second largest financial interest, otherwise satisfies *Rule 23* as required by the Reform Act.

### ii. William A. Poppo

Mr. Poppo satisfies the lead plaintiff requirements under the Reform Act. His claims are typical of the proposed class because he alleges the same injury -- loss of value in the Level 3 stock he purchased during the class period -- and the same cause -- alleged misrepresentations and omissions by the defendants in public disclosures issued during the class period -- as are alleged in the complaints filed in these consolidated cases. *See In re Ribozyme, 192 F.R.D. at 658; Adamson v. Bowen, 855 F.2d 668, 676 (10th Cir. 1988)*. In addition, Mr. Poppo appears to be an adequate class representative because there are no apparent conflicts between Mr. Poppo and other class members and his counsel can be expected to vigorously prosecute the action on behalf of the class. *See Rutter & Wilbanks Corp. v. Shell Oil Co., 314 F.3d 1180, 1187-88 (10th Cir. 2002)*. Neither the Level 3 Plaintiffs Group nor the Kiefer Family raises any challenge to Mr. Poppo's ability to fairly and adequately represent the class or asserts that he will be subject to unique defenses not applicable to the **[\*19]** proposed class. While conceding it has the smallest financial interest among the movants, the Kiefer Family requests in its briefing that it be designated as co-lead plaintiff or added to the Level 3 Plaintiffs Group. The same concerns addressed in my discussion of the Level 3 Plaintiffs Group's motion apply to such a request and, therefore, the Kiefer Family cannot serve as lead plaintiff in this action unless Mr. Poppo is not so qualified. Because the Court finds that Mr. Poppo satisfies each requirement of the lead plaintiff provisions of the Reform Act, he is entitled to serve as lead plaintiff in this consolidated action.

### C. Approval of Selected Lead Counsel

The Reform Act allows the most adequate lead plaintiff to select and retain lead counsel, subject to the Court's approval. *15 U.S.C. § 78u-4(a)(3)(B)(v)*. Mr. Poppo has selected Coughlin Stoia Geller Rudman & Robbins LLP and Johnson Bottini, LLP to serve as co-lead counsel and Dyer & Berens LLP to serve as liaison counsel. While Mr. Poppo's motion papers suggest that these firms are well qualified to prosecute securities fraud class actions such as this one, Mr. Poppo does not explain why two law firms are necessary to function **[\*20]** as lead counsel. The Court is obligated to protect the interests of the proposed class in approving lead counsel and has reservations about appointing co-lead counsel to represent an individual lead plaintiff, due to the possibility for inefficiency and duplication of effort such an arrangement poses. *See In re Party City Securities Litigation, 189 F.R.D. 91, 115 (D.N.J. 1999)* ("The potential for duplicative services and the concomitant increase in attorneys' fees work against the approval of more than one law firm, especially in cases in which one law firm has the proven ability to adequately manage and litigate securities class actions").

For the foregoing reasons, the Court defers its approval of lead counsel at this time. Mr. Poppo shall provide the Court with further information as ordered herein that addresses the following: why one law firm is not sufficient to function as lead counsel in this case; the proposed division of labor among each law firm; the mechanism for communication among Mr. Poppo, his proposed lead counsel, and his proposed liaison counsel; and relevant facts concerning how Mr. Poppo selected counsel and the nature of the retainer agreement he has negotiated **[\*21]** with counsel. *See Miller v. Ventro Corp., No. 01-CV-1287, 2001 U.S. Dist. LEXIS 26027, 2001 WL 34497752, *13 (N.D. Cal. Nov. 28, 2001)* (requiring lead plaintiff to "demonstrate what specifically about this case requires the need for co-lead counsel, any agreement between the firms on division of labor and resources, and any history of the proposed firms working together in similar litigation"); *In re Cendant, 264 F.3d at 276* (listing five factors relevant to the court's consideration of the manner in which lead plaintiff selected counsel

and the retainer agreement negotiated between them).

## III. CONCLUSION

Accordingly, it is

**ORDERED** that William A. Poppo's motion for appointment as lead plaintiff and approval of lead counsel [Docket No. 31] is GRANTED in part. The motion is granted to the extent that it requests appointment of Mr. Poppo as lead plaintiff. The Court defers ruling on the portion of the motion requesting approval of lead counsel selected by Mr. Poppo. It is further

**ORDERED** that the Level 3 Plaintiffs Group's motion for appointment as lead plaintiff and approval of lead counsel [Docket No. 32] is DENIED. It is further

**ORDERED** that the Kiefer Family's motion for appointment as lead plaintiff and approval **[*22]** of lead counsel [Docket No. 36] is DENIED. It is further

**ORDERED** that Mr. Poppo shall submit briefing to the Court on or before **May 11, 2009** addressing selection and approval of counsel in this action, consistent with the dictates of this Order.

DATED May 4, 2009.

BY THE COURT:

/s/ Philip A. Brimmer

PHILIP A. BRIMMER

United States District Judge



LEXSEE 2009 U.S. DIST. LEXIS 45089

**EUGENE A. EHLER, FRANCIS CORDES, and SHIVANII SINGH, individually and on behalf of all others similarly situated, Plaintiffs, v. IPEX, INC., and IPEX USA, LLC, Defendants.**

**Civil Action No. 08-cv-02220-CMA-BNB**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO**

*2009 U.S. Dist. LEXIS 45089*

**May 15, 2009, Decided**
**May 15, 2009, Filed**

**COUNSEL:**  [*1] For Francis Cordes, Plaintiff: Michael D. Plachy, LEAD ATTORNEY, Joshua Fredrick Bugos, Rothgerber Johnson & Lyons, LLP-Denver, Denver, CO; David L. Black, Holland & Hart, LLP-Denver, Denver, CO; Jeffrey B. Cereghino, Merrill, Nomura & Molineux, LLP, Danville, CA; Michael F. Ram, Levy Ram & Olson, LLP, San Francisco, CA; Shawn M. Raiter, Larson King, LLP, St. Paul, MN.

For Shivanii Singh, Plaintiff: Joshua Fredrick Bugos, Michael D. Plachy, LEAD ATTORNEYS, Rothgerber Johnson & Lyons, LLP-Denver, Denver, CO; David L. Black, Holland & Hart, LLP-Denver, Denver, CO; Jeffrey B. Cereghino, Merrill, Nomura & Molineux, LLP, Danville, CA; Michael F. Ram, Levy Ram & Olson, LLP, San Francisco, CA; Shawn M. Raiter, Larson King, LLP, St. Paul, MN.

For Ipex, Inc., Ipex USA, LLC, Defendants: Kay J. Rice, Cooper & Clough, PC, Denver, CO.

**JUDGES:** CHRISTINE M. ARGUELLO, United States District Judge.

**OPINION BY:** CHRISTINE M. ARGUELLO

**OPINION**

**ORDER REGARDING OUTSTANDING MOTIONS**

This matter is before the Court on (1) Defendants' Motion to Transfer Venue Pursuant to *28 U.S.C. § 1404(a)*, filed February 23, 2009 (Doc. # 17); (2) Plaintiffs' Motion to Appoint Interim Lead Counsel and Liaison Counsel, filed March 20, 2009 (Doc. # 22); (3) the  [*2] parties' Joint Motion to Enter Agreed-Upon Order Resolving Defendants' Motion to Transfer Venue Pursuant to *28 U.S.C. § 1404(a)*, Plaintiff's Motion to Join Francis Cordes and Shivanii Singh in Their Individual Capacities and as Representatives of the Class Pursuant to *Fed. R. Civ. P. 20(a)(1)*, and Plaintiff's Motion to Appoint Interim Lead Counsel and Liaison Counsel, filed April 6, 2009 (Doc. # 29); and (4) the parties' Stipulated Motion for Extension of Time in Furtherance of Settlement Negotiations, filed May 1, 2009 (Doc. # 43).

**BACKGROUND**

This case is a putative class action seeking damages and injunctive relief against Defendants IPEX, Inc. and IPEX USA, LLC (collectively, "IPEX") for allegedly manufacturing and selling a defective plumbing system. The case is one of a number of related lawsuits against IPEX that have

Case 1:09-cv-01186-JLK-KMT   Document 15   Filed 06/22/09   USDC Colorado   Page 22 of 25

Page 2
2009 U.S. Dist. LEXIS 45089, *

been filed in various courts across the country. The parties have filed numerous procedural motions concerning the proper venue, the proper parties, the proper counsel, and the proper schedule. Because of the related nature of many of these motions, the Court addressed the motions in one comprehensive Order. The Court's rulings on the motions are as follows.

## ANALYSIS

### I.   [*3] MOTION TO TRANSFER VENUE (DOC. # 17)

Shortly after the filing of the operative second amended complaint, IPEX filed a motion to transfer this case to the United States District Court for the Western District of Texas, arguing that the critical parties, witnesses, and evidence reside there. (Doc. # 17.) However, IPEX later conceded that it would withdraw the transfer motion upon the joining of two Colorado plaintiffs -- Francis Cordes and Shivanii Singh -- and the dismissal of plaintiff Eugene Ehler. (*See* Doc. # 29 at 2.) On April 14, 2009, Francis Cordes and Shivanii Singh were added as plaintiffs. (*See* Doc. # 34.) And on May 11, 2009, the parties stipulated to the dismissal, without prejudice, of plaintiff Eugene Ehler. [1] (*See* Doc. # 45.)

> 1   The parties requested the Court enter an order dismissing Mr. Ehler. (*See* Doc. # 45.) However, pursuant to *Fed. R. Civ. P. 41(a)(1)(A)(ii)*, where, as in this case, an agreed-upon stipulation of dismissal is filed, that stipulation serves to effectuate the dismissal without a court order.

For these reasons, Defendants' Motion to Transfer Venue Pursuant to *28 U.S.C. § 1404(a)* is deemed WITHDRAWN by agreement of the parties.

### II. MOTION TO APPOINT INTERIM   [*4] LEAD COUNSEL AND LIAISON COUNSEL (DOC. # 22)

*Fed. R. Civ. P. 23(g)(3)* permits this Court to "designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Five law firms -- Merrill Nomura & Molineux, LLP, Audet & Part-

ners, LLP, Cuneo Gilbert & LaDuca, LLP, Lockridge Grindal Nauen, P.L.L.P., and Levy Ram & Olson, LLP -- seek appointment as joint interim class counsel. (*See* Doc. # 22 at 1.) The firm of Rothgerber Johnson & Lyons LLP seeks appointment as interim liaison class counsel. (*See id.*) Defendants take no position on this request. (*See* Doc. # 29 at 4.)

*Rule 23(g)(3)* is silent as to the standards concerning the appointment of interim counsel. However, "[w]hen appointing interim class counsel, courts generally look to the same factors used in determining the adequacy of class counsel under *Rule 23(g)(1)(A)*." *In re Mun. Derivatives Antitrust Litig., 252 F.R.D. 184, 186 (S.D.N.Y. 2008). Rule 23(g)(1)(A)* provides that the Court must consider counsel's work in identifying or investigating the potential claims, counsel's experience in handling complex class actions, counsel's knowledge of the applicable law, and the   [*5] resources that counsel will bring to bear in representing the class.

Considering the firms' qualifications in light of these factors, the Court is satisfied that their appointment as interim lead and liaison counsel is appropriate. The firms have significant experience litigating complex consumer class actions, and appear to have the resources and skills necessary to effectively represent the proposed class. (*See, e.g.,* Doc. # 22 at 5-12.) The Court has some concern that the appointment of five firms as joint interim lead counsel could lead to duplicative work and other inefficiencies. However, these firms represent that their proposed appointment is a result of negotiations between eighteen plaintiffs' law firms in several related class-action lawsuits across the country, and that the five firms are already serving as joint lead counsel in most of these related cases. (*See* Doc. # 22 at 1-2 and attachment 4.) They have committed to conduct, efficiently and economically, pretrial tasks and to monitor the litigation to avoid unnecessary expenditures. (*See id.* at attachment 4.) Finally, the parties represent that they are currently engaged in discussions aimed at resolving all of the related   [*6] IPEX lawsuits in a comprehensive settlement. (*See* Doc. # 43 at 1.) The Court finds that it would be particularly appropriate and in the best interest of the putative class to have a consistent leadership structure in the related cases in order to

further effective and efficient settlement negotiations.

For these reasons, the Court GRANTS the Motion to Appoint Interim Lead Counsel and Liaison Counsel. The Court further adopts the responsibilities of counsel enumerated in the proposed Order accompanying the motion. The responsibilities of counsel shall be as follows.

Plaintiffs' interim lead counsel shall:

(a) determine and present (in briefs, oral argument, or such other fashion as may be appropriate, personally or by a designee) to the Court and opposing parties the position of the plaintiffs on all matters arising during pretrial proceedings;

(b) conduct settlement negotiations on behalf of plaintiffs;

(c) delegate specific tasks to other counsel in a manner to ensure that pretrial preparation for the plaintiffs is conducted effectively, efficiently, and economically, establish any necessary organizational structure;

(d) enter into stipulations, with opposing counsel, necessary for the [*7] conduct of the litigation;

(e) prepare and distribute to the parties periodic status reports;

(f) maintain adequate time and disbursement records covering services as lead counsel;

(g) monitor the activities of co-counsel to ensure that schedules are met and unnecessary expenditures of time and funds are avoided;

(h) perform such other duties as may be incidental to proper coordination of plaintiffs' pretrial activities or authorized by further order of the Court, including the drafting and/or filing of all pleadings, orders, and correspondence necessary to conduct the litigation; and

(i) plan and coordinate, to the extent practicable, with the related actions filed in District Court in Texas, California and Washington, all discovery, law and motion practice and related matters, to ensure the efficient prosecution of the related cases.

Plaintiffs' interim liaison counsel shall:

(a) maintain and distribute to co-counsel and to Defendants' Liaison Counsel an up-to-date service list;

(b) receive and, as appropriate, distribute to co-counsel orders from the Court and documents from opposing parties and counsel; and

(c) maintain and make available to co-counsel at reasonable hours a complete file [*8] of all documents served by or upon each party, except such documents as may be available at a documents depository.

### III. JOINT MOTION (DOC. # 29)

In an attempt to resolve a number of outstanding issues raised in earlier filed motions, including those discussed above, the parties filed a Joint Motion to Enter Agreed-Upon Order Resolving Defendants' Motion to Transfer Venue Pursuant to *28 U.S.C. § 1404(a)*, Plaintiff's Motion to Join Francis Cordes and Shivanii Singh in Their Individual Capacities and as Representatives of the Class Pursuant to *Fed. R. Civ. P. 20(a)(1)*, and Plaintiff's Motion to Appoint Interim Lead Counsel and Liaison Counsel ("Joint Motion"). (*See* Doc. # 29.) The parties specifically requested this Court enter an order (1) granting plaintiff's Motion to Join Francis Cordes and Shivanii Singh in Their Individual Capacities and as Representatives of the Class Pursuant to *Fed. R. Civ. P. 20(a)(1)*; (2) dismissing the claims of plaintiff Eugene Ehler and deeming Defendants' Motion to Transfer Venue Pursuant to *28 U.S.C. § 1404(a)* to be withdrawn;

(3) granting Plaintiff's Motion to Appoint Interim Lead Counsel and Liaison Counsel; and (4) amending the Court's Scheduling Order [*9] with respect to a number of pretrial deadlines. (*See id.* at attachment 1.)

The Court has already addressed most of the requested relief, either in this Order or prior to. As noted above, Francis Cordes and Shivanii Singh were previously permitted to be joined as plaintiffs, and in this Order plaintiff Eugene Ehler has been dismissed, the motion to transfer venue has been deemed withdrawn, and the motion to appoint interim counsel has been granted. *See supra* at Sec. I-II. Thus, these portions of the Joint Motion are moot.

The Court also finds the request to amend certain deadlines to be moot. After the filing of the Joint Motion, all of the referenced deadlines were addressed, and many of the requested extensions were granted, in an Order entered by Magistrate Judge Boyd N. Boland. (*See* Doc. # 34.) Although this Order was entered on plaintiff's motion to join Francis Cordes and Shivanii Singh (Doc. # 23) and not on the Joint Motion, the Court reads the Order as having the effect of mooting the requests for extensions in the Joint Motion.

For these reasons, the Court DENIES the Joint Motion as MOOT.

## IV. STIPULATED MOTION FOR EXTENSION OF TIME IN FURTHERANCE OF SETTLEMENT NEGOTIATIONS (DOC. [*10] # 43)

Finally, the parties recently filed a Stipulated Motion for Extension of Time in Furtherance of Settlement Negotiations (Doc. # 43) in which they request that the deadline for filing class certification motions, currently set in the Scheduling Order for October 1, 2009, be extended to November 9, 2009. The Scheduling Order may only be amended on a showing of good cause. (*See* Doc. # 15 at 17.) The parties contend that this one-month extension will permit them to focus their present efforts on settlement and mediation of all of the IPEX lawsuits. (*See* Doc. # 43 at 4-5.) The parties further represent that discovery will continue during the settlement discussions and, thus, if settlement proves unsuccessful, the discovery process will have been mov-

ing along throughout. (*See id.* at 5.) For these reasons, the Court finds that there is good cause for the extension and therefore GRANTS the parties' Stipulated Motion for Extension of Time in Furtherance of Settlement Negotiations.

## CONCLUSION

Having reviewed the parties' various motions discussed herein, the Court ORDERS as follows:

1. Defendants' Motion to Transfer Venue Pursuant to *28 U.S.C. § 1404(a)* (Doc. # 17) is deemed WITHDRAWN by agreement [*11] of the parties;

2. Plaintiffs' Motion to Appoint Interim Lead Counsel and Liaison Counsel (Doc. # 22) is GRANTED;

3. The parties' Joint Motion to Enter Agreed-Upon Order Resolving Defendants' Motion to Transfer Venue Pursuant to *28 U.S.C. § 1404(a)*, Plaintiff's Motion to Join Francis Cordes and Shivanii Singh in Their Individual Capacities and as Representatives of the Class Pursuant to *Fed. R. Civ. P. 20(a)(1)*, and Plaintiff's Motion to Appoint Interim Lead Counsel and Liaison Counsel (Doc. # 29) is DENIED as MOOT;

4. The parties' Stipulated Motion for Extension of Time in Furtherance of Settlement Negotiations (Doc. # 43) is GRANTED; and

5. Because of the dismissal of Plaintiff Eugene Ehler, the caption on all subsequent filings shall reflect the removal of Mr. Ehler as a plaintiff in this case.

DATED: May 15, 2009

BY THE COURT:

/s/ Christine M. Arguello

CHRISTINE M. ARGUELLO

2009 U.S. Dist. LEXIS 45089, *

United States District Judge