**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge John L. Kane**


Civil Action No. **09-cv-1186-JLK-KMT**


**IN RE CORE BOND FUND**

---

**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS
SETTLEMENT AND APPROVAL OF NOTICE PLAN**

---

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

I.      INTRODUCTION ............................................................................................... 1

II.     FACTUAL AND PROCEDURAL BACKGROUND ........................................... 3

        A.      Overview of Initial Events and Claims ................................................... 3

        B.      Overview of the Defenses ...................................................................... 5

        C.      The Stage of the Proceedings ................................................................ 6

                1.      Significant Production of Documents and Data ........................... 7

                2.      Expert Analyses of Liability and Damages ................................. 8

        D.      Settlement Negotiations and the Proposed Settlement .......................... 9

                1.      The Allocation Mediation Before Judge Phillips ........................ 10

                2.      The Terms of the Settlement ...................................................... 11

III.    THE SETTLEMENT SATISFIES THE CRITERIA FOR PRELIMINARY
        APPROVAL ...................................................................................................... 12

        A.      The Proposed Settlement Was Fairly and Honestly Negotiated ............ 15

        B.      Serious Questions of Law and Fact Exist, Placing the Outcome of the
                Litigation in Doubt ............................................................................... 15

                1.      Defendants Contest the Claims of Misrepresentation .................. 16

                2.      Defendants Have Viable Loss Causation Defenses ...................... 16

                3.      The Amount of Damages Is Vulnerable to Findings that Early
                        Statements Are Not Misleading .................................................. 17

                4.      The Amount of Damages Is Susceptible to Findings that Losses
                        Were Linked to Appropriate Investments .................................... 17

                5.      Defendants' Pending Motions Could Be Decided Against the Class .............. 17

        C.      The Value of an Immediate Recovery Outweighs the Possibility of Future
                Relief after Protracted and Expensive Litigation .................................. 18

        D.      The Parties and Their Counsel Have Judged the Settlement as Fair and
                Reasonable ............................................................................................ 19

IV.    CERTIFICATION OF THE CLASS IS PROPER AND NECESSARY ................................20

    A.    The Class Meets the Requirements of Rule 23(a) ........................................22

        1.    The Proposed Class Is so Numerous as to Make Joinder Impracticable..................................................................................22

        2.    There Are Questions of Law and Fact Common to the Class........................22

        3.    Lead Plaintiff's Claims Are Typical of the Claims of the Class.....................23

        4.    Lead Plaintiff and Lead Counsel Have and Will Fairly and Adequately Represent the Interests of the Class..............................23

    B.    The Proposed Settlement Class Satisfies the Requirements of Rule 23(b)(3) ...............................................................................................24

        1.    Common Questions of Law and Fact Predominate ........................................25

        2.    A Class Action Is a Superior Method of Adjudication ..................................26

V.    THE COURT SHOULD APPROVE THE FORM OF THE NOTICE AND PLAN FOR NOTIFYING THE CLASS........................................................................27

VI.    PROPOSED SCHEDULE OF EVENTS..............................................................30

VII.    CONCLUSION.................................................................................................31

## TABLE OF AUTHORITIES

**Cases**                                                                                                              **Page(s)**

*Adamson v. Bowen*,
   855 F.2d 668 (10th Cir. 1988).................................................................................................23

*Alpern v. UtiliCorp United, Inc.*,
   84 F.3d 1525 (8th Cir. 1996)..................................................................................................26

*Alvarado Partners, L.P. v. Mehta*,
   130 F.R.D. 673 (D. Colo. 1990)..............................................................................................27

*Amchem Products v. Windsor*,
   521 U.S. 591 (1997) ....................................................................................... *passim*

*Anderson v. City of Albuquerque*,
   690 F.2d 796 (10th Cir. 1982)................................................................................................21

*Ashley v. Reg'l Transport District Amalgamated Transit Union Division 1001 Pension Fund*
   *Trust*, No.05-cv-01567-WYD-BNB,
   2008 WL 384576 (D. Colo. Feb. 11, 2008) ...........................................................................13

*Ashley v. Reg'l Transport Dist. & Amalgamated Transit Union Div. 1001*
   *Pension Fund Trust*, No. 05-cv-01567-WYD-BNB,
   2008 WL 384579 (D. Colo. Feb. 11, 2008) ...........................................................................30

*In re Cendant Corp. Sec. Litig.*,
   264 F.3d 201 (3d Cir. 2001)...................................................................................................19

*DG ex rel. Stricklin v. Devaughn*,
   594 F.3d 1188 (10th Cir. 2010)..................................................................................20, 22, 23

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 175 (1974) ..............................................................................................................28

*Esplin v. Hirschi*,
   402 F.2d 94 (10th Cir. 1968)..................................................................................................27

*Gottlieb v. Wiles*, 11 F.3d 1004 (10th Cir. 1993),
   *overruled on other grounds*,
   *Devlin v. Scardelletti*, 536 U. S. 1 (2002) ............................................................................28

*Gustafson v. Alloyd Co.*,
   513 U.S. 561 (1995)...............................................................................................................26

*Horton v. Leading Edge Mktg.*, No. 04-cv-00212-PSF-CBS,
2007 WL 2472046 (D. Colo. Aug. 28, 2007) .........................................................28

*In re Initial Pub. Offering Sec. Litig.*,
226 F.R.D. 186 (S.D.N.Y. 2005) .........................................................................13

*In re Initial Pub. Offering Sec. Litig.*,
243 F.R.D. 79 (S.D.N.Y. 2007) ...........................................................................13

*Jones v. Nuclear Pharmacy, Inc.*,
741 F.2d 322 (10th Cir. 1984).....................................................................13, 14

*Lane v. Page*, No. CIV 06-1071 JB/ACT,
2011 WL 395472 (D. N.M. Jan. 10, 2011) ....................................................23, 27

*Lerner v. Haimsohn*,
126 F.R.D. 64 (D. Colo. 1989)................................................................................27

*Lucas v. Kmart Corp.*,
234 F.R.D. 688 (D. Colo. 2006)................................................................. *passim*

*Marcus v. Kansas Dep't. of Revenue*,
209 F. Supp. 2d 1179 (D. Kan. 2002) ...................................................................19

*McNeely v. Nat'l Mobile Health Care, LLC*, No. CIV 07-933-M,
2008 WL 4816510 (W.D. Okla. Oct. 27, 2008)............................................ *passim*

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
No. 02 MDL 1484, 2007 WL 313474 (S.D.N.Y. Feb. 1, 2007) ............................19

*In re Motor Fuel Temperature Sales Practices Litig.*,
258 F.R.D. 671 (D. Kan. 2009).......................................................... 13-14, 21, 28

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry v. Anderson*,
390 U.S. 414 (1968)................................................................................................18

*In re Qwest Commc'n Int'l, Inc. Sec Litig.*,
2006 U.S. Dist. LEXIS 71039 (D. Colo. Sept. 28, 2006) ................................. 15-16

*In re Qwest Commc'n Int'l, Inc. Sec. Litig.*,
625 F. Supp. 2d 1133 (D. Colo. 2009).................................................................30

*Realmonte v. Reeves*,
169 F.3d 1280 (10th Cir. 1999).............................................................................22

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
    314 F.3d 1180 (10th Cir. 2002)................................................................13, 14, 23

*Shook v. El Paso County*,
    386 F.3d 963 (10th Cir. 2004)................................................................21

*In re State Street Bank and Trust Co. Fixed Income Fund Inv. Litig.*
    No. 08-8235, 2011 WL 1206070 (S.D.N.Y. Mar. 31, 2011) ........................... 16-17

*T.J. Raney & Sons, Inc. v. Fort Cobb, Okla. Irrigation Fuel Auth.*,
    717 F.2d 1330 (10th Cir. 1983)................................................................27

*Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*, 209 F.R.D. 159
    (C.D. Cal. 2002) ................................................................27

*Treviso v. Adams*,
    455 F.3d 1155 (10th Cir. 2006)................................................................22

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005),
    cert. denied sub nom.,
    *Leonardo's Pizza by the Slice, Inc. v. Wal-Mart Stores, Inc.*,
    544 U.S. 1044 (2005)................................................................15

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982)................................................................18

*Wilkerson v. Martin Marietta Corp.*,
    171 F.R.D. 273 (D. Colo. 1997)................................................................13, 15, 18, 19

## STATUTES

15 U.S.C. §§ 77k ................................................................4

15 U.S.C. §§ 77k(a) ................................................................25

15 U.S.C. § 77l ................................................................4

15 U.S.C. § 77l(2) ................................................................25

15 U.S.C. § 77o ................................................................4, 25

15 U.S.C. § 78u-4(a) ................................................................30

Fed. R. Civ. P. 23(a) ................................................................19

Fed. R. Civ. P. 23(a)(3) ................................................................23

Fed. R. Civ. P. 23(b) ........................................................................................................26

Fed. R. Civ. P. 23(b)(3) ................................................................................ 20, 24, 25, 26

Fed. R. Civ. P. 23(c)(2) ....................................................................................................27

Fed. R. Civ. P. 23(c)(2)(B) .............................................................................................. 27

Fed. R. Civ. P. 23(c)(3) ....................................................................................................28

Fed. R. Civ. P. 23(e)(1) ....................................................................................................27

## OTHER AUTHORITIES

Ellen M. Page & Laura A. Simmons, *Securities Class Action Settlement: 2010*
    *Review & Analysis* 3, 9 (Cornerstone Research 2010)…………………………….........19

5 James Moore Wm., Moore's Federal Practice
    §23.165(3) (3d ed. 2010) …………………………………………………….……13

## I.      INTRODUCTION

Court-appointed Lead Plaintiff Dr. C. Phillip Pattison submits this unopposed motion,[1]

pursuant to Fed. R. Civ. P. 23, for an Order that, *inter alia*:  (i) preliminarily approves the terms

of the proposed $47.5 million all cash settlement as set forth in the Stipulation and Agreement of

Settlement, dated May 19, 2011, ("Stipulation" or "Settlement"); (ii) certifies the Class[2] for

settlement purposes only; (iii) approves the form and method for providing notice of the

Settlement to the Class; and (iv) schedules a settlement hearing at which requests for approval of

the proposed Settlement, the plan for distributing proceeds of the Settlement ("Distribution

Plan"), and the attorneys' fees and expense requests will be considered.[3]

Lead Plaintiff submits that the Settlement is an excellent result for the Class.  The

Settlement is not only quantitatively significant, but it was achieved with a high degree of

efficiency, given the risk of a lesser recovery or no recovery had the claims survived motion

practice and continued to trial.  The Settlement, if approved, will resolve all of the claims of the

Class against each of the Defendants in exchange for Defendants' payment of $47.5 million for

the benefit of the Class, and is the result of extensive mediated negotiations between Defendants

---

[1] Pursuant to D.C.COLO.LCivR. 7.1A, Lead Counsel has conferred with Counsel for Defendants prior to filing this motion.  Although Defendants do not concede liability or wrongdoing or that class certification would be proper if the case were not to settle, Defendants do not oppose the relief requested herein.

[2] All capitalized terms that are not defined herein have the same meanings as set forth in the Stipulation, which is being submitted herewith.

[3] A $52.5 million settlement has also been reached in the separate but related class action, *In re Oppenheimer Champion Fund Securities Fraud Class Actions*, Civil Action No. 09-cv-386-JLK-KMT, (the "Champion Fund Action"), pending before the Court, and a similar application is also being made by the Court-appointed lead plaintiffs in that case.  The settlement in this case is conditioned on, among other things, final approval of the settlement in the Champion Fund Action.  Likewise, the settlement in the Champion Fund Action is conditioned on, among other things, final approval of the settlement in this case.

and Lead Plaintiff that were assisted by former U.S. District Court Judge, the Honorable Layn R. Phillips (retired).  The Settlement – which provides an approximate recovery of 24% to 29% of Lead Counsel's estimate of the Class's likely recoverable damages at trial – is well within the range for approval and, as discussed below, far exceeds the average recovery in similar cases.  Although Lead Plaintiff believes the Class would eventually prevail on the merits, Defendants have asserted several strong defenses.  After substantial investigation, research, fact and damage discovery, and extensive expert analysis, Lead Plaintiff and Lead Counsel have determined that the proposed Settlement is fair, reasonable and adequate, and in the best interests of the Class.  Accordingly, Lead Plaintiff requests that the Court preliminarily approve the Settlement.

Lead Plaintiff also seeks approval of the form and manner of providing notice to the Class.[4]  The Notices that will be mailed to the Class use plain language to describe the Action, define the Class, identify the salient claims and defenses, explain the Settlement and the reasons for it, and describe the application that Lead Counsel[5] will make for attorneys' fees and reimbursement of litigation expenses, as well as the expenses of Lead Plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA").[6]  The Notices explain each Class

---

[4] The proposed Notice of Pendency and Proposed Settlement of Class Action for Identified Purchasers and Notice of Pendency and Proposed Settlement of Class Action for Unidentified Purchasers (collectively "Notice"), Proof of Claim form ("Proof of Claim"), Record of Fund Transactions ("ROFT"), and the Summary Notice of Proposed Settlement and Settlement Hearing ("Publication Notice"), are appended as Exhibits A-1 to A-5 to the Proposed Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order") which is submitted herewith.

[5] "Lead Counsel" as used herein refers to Labaton Sucharow LLP and Hagens Berman Sobol Shapiro LLP.  The Shuman Law Firm is liaison counsel for the proposed Class.

[6] As explained in the Notice, Lead Counsel will seek an attorneys' fee of no more than 18.5% of the Settlement Fund, which counsel believes is fair and reasonable given the excellent result

Member's right to appear, object or seek exclusion from the Class.  The manner in which Lead

Plaintiff plans to disseminate the Notice, using transactional data provided by Defendants and

other brokers when possible to make claims submission efficient and simple for the Class, is

comprehensive and is the best practicable means to reach the Class Members.  The Publication

Notice will also be printed in *Investor's Business Daily,* transmitted over a business wire and

posted on a website dedicated to the Settlement.  Because Lead Plaintiff will undertake every

reasonable effort to identify the Class Members and ensure that notice is given, the proposed

notices and plan should be approved.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Overview of Initial Events and Claims

Beginning on May 22, 2009, a series of proposed class actions were filed in this Court

alleging violations of the Securities Act of 1933 (the "1933 Act") in connection with alleged

misstatements in the Registration Statements and Prospectuses of the Oppenheimer Core Bond

Fund (the "Fund").

Throughout the spring and summer of 2009, a plethora of lawsuits against Oppenheimer

involving other Oppenheimer funds were also filed, specifically the Champion Income Fund

Action and the consolidated "Rochester Funds" cases (09-md-2063-JLK-KMT).[7]  All told, 32

putative class actions involving nine Oppenheimer funds have been consolidated before this

Court.  The Court ordered the Core Bond and Champion Income Fund Actions to proceed

---

achieved, the efficiency with which the claims were resolved without extensive court
intervention and use of judicial resources, and fee awards approved within this District.

[7] The Rochester Funds cases pending before this Court relate to the following Oppenheimer
Funds: the AMT-Free Municipal Fund, the AMT-Free New York Municipal Fund, the California
Municipal Fund, the New Jersey Municipal Fund, the Pennsylvania Municipal Fund, the
Rochester National Municipal Fund, and the Rochester Fund Municipals.  Dkt. No. 46 at 2.

together but independently of the Rochester Funds actions.  Dkt. No. 46 at 3.  Settlements of

both the Core Bond Fund and Champion Income Fund Actions are now pending before the

Court.

Pursuant to the PSLRA, on September 29, 2009, the Court appointed Dr. C. Phillip

Pattison, an individual investor in the Fund, to serve as Lead Plaintiff and approved Lead

Plaintiff's retention of Labaton Sucharow LLP as Lead Counsel and The Shuman Law Firm as

Liaison Counsel.  Dkt. No. 70.  Hagens Berman Sobol Shapiro LLP has at all times been acting

with Lead Counsel as additional counsel.

On October 13, 2009, Lead Plaintiff filed his Consolidated Class Action Complaint

asserting claims under Sections 11, 12(a)(2) and 15 of the 1933 Act (15 U.S.C. §§ 77k, 77l and

77o).  *See* Consolidated Class Action Complaint ("Complaint" or "CCAC") ¶ 9; Dkt. No. 73.

The Defendants in the Action are OppenheimerFunds, Inc., OppenheimerFunds Distributor, Inc.,

Oppenheimer Integrity Funds, John V. Murphy, Brian W. Wixted, William L. Armstrong, Robert

G. Avis, George C. Bowen, Edward L. Cameron, Jon S. Fossel, Sam Freedman, Beverly L.

Hamilton, Robert J. Malone, and F. William Marshall, Jr. (collectively "Defendants").  The

Action is brought against Defendants on behalf of all persons or entities who acquired shares of

the Oppenheimer Core Bond Fund traceable to an allegedly false and misleading Registration

Statement and Prospectus for the Fund during the period from April 30, 2007 through December

31, 2008 (the "Class Period") and who were damaged thereby.  *See* CCAC ¶ 91.

The Complaint alleges that Defendants actively marketed and sold the Fund as a "broadly

diversified portfolio of investment grade corporate and government bonds designed to seek total

return and reduce share price volatility."  CCAC ¶ 2.  Prior to 2007, the Fund adhered to its

stated investment strategy and polices.  The Complaint further alleges that in 2007 and 2008, however, and allegedly without adequate disclosure to investors, the Fund altered its investment policies and significantly increased its positions in highly leveraged, illiquid, off-balance sheet derivatives in the hopes of achieving higher returns.  CCAC ¶ 50.  Lead Plaintiff contends that the Fund invested heavily in "extraordinarily risky" mortgage-backed securities ("MBS"), credit-default swaps, and total-return swaps.  *Id*.  According to the Complaint, by investing in these purportedly risky securities, the Fund allegedly violated its fundamental principles and numerous representations in its Offering Documents concerning Fund concentration and borrowing.[8]  *See, e.g.*, CCAC ¶¶ 5, 49.  Lead Plaintiff contends that Defendants' alleged misstatements and omissions concerning the Fund's true objective and strategy assertedly resulted in hundreds-of-millions of investor dollars being poured into the Fund.  These investments allegedly caused a 35% drop in the net asset value ("NAV") of the Fund, which far exceeded loses in comparable funds during the same time period.  CCAC ¶¶ 81-83.

On December 3, 2009, Defendants moved to dismiss the Action.  *See* Dkt Nos. 78-79.  Lead Plaintiff filed his oppositions on January 19, 2010 (Dkt. No. 80), and Defendants filed their replies on February 17, 2010 (Dkt. Nos. 82-83).  Although the motions are fully briefed, the Court has withheld ruling pending settlement efforts.

### B.      Overview of the Defenses

In the pending motions to dismiss, and during settlement discussions, Defendants asserted a number of arguably credible defenses to the alleged claims.

---

[8] "Offering Documents" refers to the Fund's Registration Statements, Prospectus Materials, Statements of Additional Information, and Annual Reports. CCAC ¶¶ 39 - 41.

For example, Defendants contend that the Fund disclosed its intent to make the MBS and swap investments, the principal risks inherent in these securities, that swaps would be used for speculative purposes, and, on a quarterly basis, detailed information about every single MBS and swap investment in the Fund's portfolio.  Defendants also contend that the Fund disclosed every quarter the notional value of each and every swap it held.  Consequently, Defendants assert that investors were fully informed of the Fund's investments and the attendant risks.  Thus, according to Defendants, there were no misrepresentations or omissions of material fact in any of the Offering Documents and no cognizable damages.  Dkt. No. 78 at 27-41.

Defendants also assert that:

> ➢ the Complaint is time barred by the 1933 Act's statute of limitations (Dkt. No. 78 at 11-26);

> ➢ the Individual Defendants are not "sellers" subject to liability under the Act (Dkt. No. 79);

> ➢ Lead Plaintiff would be unable to prove loss causation based on evidence that the Fund's NAV decline resulted not from purported misstatements or omissions but from an unprecedented, world-wide credit crisis and resulting panic unforeseen by government officials, economists, or the Fund's portfolio managers.  (Dkt. No. 78 at 6-9); and

> ➢ any purported undisclosed and improper change in investment strategy occurred late in the Class Period, materially decreasing alleged damages.

Lead Plaintiff and Lead Counsel carefully considered each of these defenses, and others, before deciding that the Settlement was in the best interests of the Class.

### C.   The Stage of the Proceedings

Although a formal stay of discovery under the PSLRA has been in place, within the context of the mediation process, described below, the Parties cooperated in extensive informal discovery relating to the claims, defenses, and damages.  Defendants agreed to produce, and did

produce, key documents relevant to Lead Plaintiff's liability evaluation and Defendants' defenses.  In addition, Defendants produced critical and detailed financial information that enabled Lead Counsel and consulting experts to conduct thorough damages analyses.  Given the extent of the productions, Lead Counsel's detailed review thereof, and the analyses of Lead Plaintiff's consulting experts, Lead Counsel and Lead Plaintiff were able to make an extensive and well-informed liability and damages assessment before settling the Action.

### 1.   Significant Production of Documents and Data

In order to fully explore the possibility of settlement, Lead Plaintiff requested a comprehensive production of liability and damage-related documents.  Defendants initially resisted the production, which was eventually prompted by Lead Plaintiff's Freedom of Information Act ("FOIA") request to the Oregon Department of Justice and the Oregon Treasurer in connection with litigation on behalf of the Oregon College Savings Plan Trust that invested in the Fund.  Defendants' subsequent electronic document production comprised over 3,661 documents and over 34,300 pages.  After review and analysis of these documents was complete, Lead Counsel requested that Defendants produce additional e-mails and un-redacted versions of certain documents.  Defendants made a supplemental production of approximately 6,914 documents comprising about 43,780 pages, which Lead Counsel promptly reviewed.

The documents analyzed by Lead Counsel's review team included all Prospectuses and related Statements of Additional Information; marketing materials; internal risk guidelines and compliance materials; Trustee Board meeting minutes; minutes of various pertinent committees; monthly risk assessments and a plethora of risk management reports; daily performance reports;

internal investment strategy notes and presentations; analyst papers; and internal e-mail discussions relating to the foregoing.

Defendants also produced complete transaction data for the Fund.  This critical electronic information included transaction records for all accounts holding or purchasing the Core Bond Fund during the Class Period.  Transactions were coded and a key was supplied so that purchases, redemptions, exchanges, transfers, cash dividends, dividend reinvestments and fees could be identified.  In addition, Defendants provided a schedule of all dividends payable per share on every date of the Class Period.

## 2. Expert Analyses of Liability and Damages

Prior to filing the Complaint, Lead Plaintiff retained consulting experts H. Gifford Fong and Gifford Fong Associates.[9]  Mr. Fong performed a complete forensic analysis of the Core Bond Fund portfolio during the Class Period, including a detailed review of all total return and credit default swap positions, mortgage-backed securities and other investments; concentration analysis; illiquidity limit review; duration analysis; spread risk assessment; leverage calculations; performance and benchmarking analyses; and a review of pricing accuracy.  The project, which consumed over 700 man-hours, involved extracting all of the Fund's holdings data from SEC filings; identifying CUSIP numbers for all of the investments; validating all of the data; and then running forensic analyses.

---

[9] Mr. Fong, the Editor of the Journal of Investment Management, is an expert in fixed income portfolio management and financial engineering.  He serves as an advisor to the United States Securities Exchange Commission ("SEC") on risk analysis and pricing issues and as an advisor to the Federal Reserve and United States Treasury for the third-party repurchase program relating to the financial crisis, where Mr. Fong values complex mortgage-backed securities, collateralized debt obligations and other asset-backed securities.

Lead Plaintiff also retained the services of consulting expert Candace Preston, a founding principal of Financial Markets Analysis, Inc., who has more than 30 years of experience in the finance arena.  Based upon the transaction data produced by Defendants, Ms. Preston ran detailed, "bottoms up" damages calculations under Sections 11 and 12 of the 1933 Act  on both a FIFO and LIFO basis.  Ms. Preston also analyzed the impact of various defense arguments relating to shortened liability time periods, permissible levels of swap investments, the general market decline resulting from the financial crisis, and damages caused by declines in the Fund's corporate bond investments.

Thus, the strengths and weaknesses of the claims and defenses were well understood by Lead Plaintiff and Lead Counsel at the time the Settlement was reached.

### D.      Settlement Negotiations and the Proposed Settlement

The $47.5 million Settlement is the result of numerous discussions between the Parties and three full-day mediation sessions during the summer and fall of 2010, during which the highly regarded Judge Phillips served as mediator.  Defendants requested a combined mediation that included both this Action and the Champion Income Fund Action.  Judge Phillips was chosen based on his esteemed background and experience in resolving highly-complex and contentious securities litigation.

After exchanging separate opening mediation briefs and responsive briefs relating to both Actions, the Parties participated in a lengthy, confidential two-day mediation session on July 19 and 20, 2010 in New York City.  Although productive in airing each side's views on liability and damages, these mediation sessions did not result in an agreement.  Lead Plaintiff's work continued, and the Parties eventually agreed to hold another mediation session.  After

exchanging supplemental mediation submissions, the Parties held a third day of mediation with Judge Phillips on November 9, 2010.  This session was successful and resulted in Lead Plaintiff and Defendants entering into a Memorandum of Understanding (the "MOU") that set forth the material terms of the proposed settlements of both this Action and the Champion Income Fund Action.  The MOU provided for the Defendants to pay a total sum of $100 million to settle both Actions, making an allocation between the two cases necessary.  The final terms of the Settlements were negotiated over the past six months, resulting in the Stipulation now presented to the Court for preliminary approval.

### 1.    The Allocation Mediation Before Judge Phillips

As noted, the combined mediation and MOU determined a total settlement sum of $100 million for both the Core Bond Fund and Champion Income Fund Actions.  Consequently, Lead Plaintiff and Lead Counsel believed it was prudent to engage wholly-independent counsel to resolve the allocation issues between the two cases.  In order to remove any potential for conflict (or even the taint of a conflict), Lead Counsel retained the law firms of Klafter Olsen & Lesser LLP ("Klafter") to represent the interests of the Core Bond Fund Class, and Goldenberg Schneider & Groh, LPA ("Goldenberg") to represent the interests of the Champion Income Fund Class in allocating the settlement amount between the Actions.  To further resolve the allocation issue, Lead Counsel again called upon Judge Phillips to conduct a binding arbitration on the proper allocation.

Allocation counsel spent approximately six weeks familiarizing themselves with the evidence and working with Lead Plaintiff's damages experts.  Each side submitted mediation briefs to Judge Phillips advocating their respective positions and making a suggested allocation

of the settlement amount.  On February 25, 2011, Judge Phillips held a binding mediation solely

on the issue of allocation.  After considering all of the evidence and the arguments submitted by

allocation counsel, Judge Phillips determined that the combined settlement fund would be

allocated as 47.5% for the benefit of the Core Bond Fund Class, and 52.5% for the benefit of the

Champion Income Fund Class.

### 2.    The Terms of the Settlement

The Settlement results in the creation of a common fund in the amount of $47.5 million

for the benefit of the Core Bond Fund Class.[10]   In exchange for this payment by Defendants, the

Class agrees to release all claims, alleged or that could be alleged, that arise out of the facts,

disclosures, allegations, and losses etc. set forth in the Complaint or at issue in the Action, as

well as claims relating to the prosecution, defense and settlement of the Action, as against all

Released Defendant Parties, which includes Defendants and certain third-parties.  Stipulation ¶¶

1(x); (y).[11]  The Settlement is expressly conditioned on the entry of several orders by this Court,

---

[10] This is not a claims-made settlement; if all the conditions of the Stipulation are satisfied, none of the Settlement Fund will be returned to the Defendants.  Stipulation ¶ 16.

[11] As set forth in the Stipulation ¶ 1(x), "'Released Claim(s)' means all claims, demands, rights, actions, suits, or causes of action of every nature and description, whether known or unknown (including Unknown Claims, as defined herein), whether the claims arise under federal, state, statutory, regulatory, common, foreign or other law, whether foreseen or unforeseen, and whether asserted individually, directly, representatively, derivatively, or in any other capacity, that the Releasing Plaintiff Parties: (1) asserted in the Complaint or the Action as against the Released Defendant Parties; (2) have asserted, could have asserted, or could assert in the future, in any forum against the Released Defendant Parties that are based upon, arise out of, or relate in any way to the facts, matters, transactions, allegations, claims, losses, damages, disclosures, filings, or statements set forth in the Complaint or at issue in the Action; or (3) have asserted, could have asserted, or could assert in the future relating to the prosecution, defense, or settlement of the Action as against the Released Defendant Parties.  Released Claim(s) does not include: (1) claims to enforce the Settlement or (2) the rights of the Core Bond Fund in any derivative claim filed or asserted against the Released Defendant Parties prior to the date of this Stipulation."

including orders preliminarily and then finally approving the Settlement, including a bar order of

contribution and indemnification claims. *See* Stipulation ¶ 23 and 25(c), Exhibit B.

The terms of the Settlement are embodied in the Stipulation and a supplemental letter

agreement concerning the circumstance under which the level of requested exclusions from the

Settlement (the "Opt-Out Threshold") could cause Oppenheimer to terminate the Settlement.

Stipulation ¶ 23(d).  As is commonly done, the letter agreement is not being filed in order to keep

the Opt-Out Threshold confidential and to avoid an intentional trigger by a large shareholder.

Other than the Opt-Out Threshold, all substantive provisions of the letter agreement are recited

in the Stipulation.

## III.   THE SETTLEMENT SATISFIES THE CRITERIA FOR PRELIMINARY APPROVAL

Federal Rule of Civil Procedure 23(e) requires judicial approval for any compromise or

settlement of class action claims.  There are three steps to be taken by the Court in considering

approval of a proposed class action settlement:  (i) the Court must preliminarily approve the

proposed settlement; (ii) members of the class must be given notice of the proposed settlement;

and (iii) a final hearing must be held, after which the Court must decide whether the settlement is

fair, reasonable and adequate. At the preliminary approval stage, "the court reviews the proposed

terms of settlement and makes a preliminary determination on the fairness, reasonableness and

---

"'Released Defendant Parties' means (1) any and all of the Defendants and/or their current or former attorneys, auditors, officers, directors, employees, partners, subsidiaries, affiliates, related companies, parents, insurers, heirs, executors, representatives, predecessors, successors, assigns, trustees, or other individual or entity in which any Defendant has a controlling interest; and (2) broker-dealers or financial advisers of any Class Member.  For the avoidance of doubt, OIF and the Core Bond Fund are included in the definition of Released Defendant Parties."   Stipulation ¶ 1(y).

adequacy of the settlement terms" before issuing notice to the proposed class. *In re Initial Public Offering Sec. Litig.*, 226 F.R.D. 186, 191 (S.D.N.Y. 2005).

Approval of a proposed settlement is within the sound discretion of the Court. *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187 (10th Cir. 2002); *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984). Settlements are generally favored, so a court should approve a settlement if it is fair and reasonable. *Wilkerson v. Martin Marietta Corp.,* 171 F.R.D. 273, 283-284 (D. Colo. 1997) (applying factors considered in class action settlements to settlement of EEOC action). The court should not decide the merits of the underlying action on a motion for preliminary approval. *Ashley v. Reg'l Transp. Dist. Amalgamated Transit Union Div. 1001 Pension Fund Trust*, No. 05-cv-01567-WYD-BNB, 2008 WL 384576, at * 2 (D. Colo. Feb. 11, 2008).

The primary question raised by a request for preliminary approval is whether the proposed settlement is "within the range of possible approval." *See, e.g., In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007). The purpose of preliminary approval is to determine if there is any reason <u>not</u> to notify the Class and proceed to the fairness hearing. <u>Lucas v. Kmart Corp.</u>, 234 F.R.D. 688, 693 (D. Colo. 2006). The ultimate determination of whether a proposed settlement is fair, reasonable and adequate is made only at the final approval stage, after notice of the settlement has been given to the class members and they have had an opportunity to voice their view of the settlements. *See* 5 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE §23.165(3) (3d ed. 2010).

Moreover, the standards for preliminary approval of a class settlement are not as stringent as those applied for final approval. *In re Motor Fuel Temperature Sales Practices Litig.*, 258

F.R.D. 671, 675-676 (D. Kan. 2009).  Unless the Court's initial examination "disclose[s] grounds to doubt its fairness or other obvious deficiencies," the Court should order that notice of a formal fairness hearing be given to settlement class members under Rule 23(e).  *Id.*

Under these procedures, Lead Plaintiff presently requests that the Court grant preliminary approval of the Settlement so that notice may be sent to the Class.  At the final approval hearing, the Court will have before it more extensive submissions in support of the proposed Settlement and will then be asked to determine whether the Settlement is fair, reasonable, and adequate and should be finally approved.  But, at this time, it is submitted that the proposed Settlement is well "within the range of possible approval" and will satisfy the following four factors that the Tenth Circuit directs the Court to consider in determining whether a proposed settlement is fair reasonable and adequate:

> (1) whether the proposed settlement was fairly and honestly negotiated;
>
> (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;
>
> (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and
>
> (4) the judgment of the parties that the settlement is fair and reasonable.

*Rutter & Wilbanks Corp*, 314 F.3d at 1188; *McNeely v. Nat'l Mobile Health Care, LLC*, No. CIV 07-933-M, 2008WL 4816510, at *10 (W.D. Okla. Oct. 27, 2008); *Lucas*, 234 F.R.D. 688 at 693; *Jones*, 741 F.2d 322 at 324.  The Settlement satisfies all four factors.

### A.      The Proposed Settlement Was Fairly and Honestly Negotiated

Where a settlement results from arm's-length negotiations between experienced counsel, "the Court may presume the settlement to be fair, adequate, and reasonable." *Lucas*, 234 F.R.D. at 693 (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005), *cert. denied sub nom., Leonardo's Pizza by the Slice, Inc. v. Wal-Mart Stores, Inc.,* 544 U.S. 1044 (2005)).  As discussed above, the proposed Settlement is the product of extensive arm's-length, informed, non-collusive negotiations that occurred between the Parties over the span of multiple months and with the assistance and guidance of Judge Phillips.  It was the result of vigorous advocacy by the Parties.  *See Lucas,* 234 F.R.D. at 693 (citing *Wilkerson v. Martin Marietta Corp.,* 171 F.R.D. 273, 284 (D. Colo. 1997)).  The Settlement was reached only after extensive analysis by Lead Counsel and their experts, thorough informal discovery, the exchange of comprehensive mediation statements, and negotiations, including three full days of mediation before Judge Phillips, spanning many months.  The mediations took place at a point when the Parties had a deep understanding of the strengths and weaknesses of the Class's claims and the extent of recoverable damages.  The Settlement is a product of informed, fair and honest negotiations among experienced counsel.

### B.      Serious Questions of Law and Fact Exist, Placing the Outcome of the Litigation in Doubt

The Court need not reach the merits of the case at this stage, but serious questions of law and fact exist that could impact the result of litigation. *Lucas,* 234 F.R.D. at 693-94.  "The presence of such doubt tips the balance in favor of settlement because settlement creates a certainty of some recovery, and eliminates doubt, meaning the possibility of no recovery after a long and expensive litigation." *McNeely*, 2008 WL 4816510, at *13 (citing *In re Qwest*

*Commc'n Int'l, Inc. Sec Litig.,* 2006 U.S. Dist. LEXIS 71039, at *16-18 (D. Colo. Sept. 28, 2006)).   In view of these risks, discussed below, plus the risks generally of proceeding to trial with securities claims against enormously well-resourced and defended Defendants, Lead Counsel believe it is the Class's best interests to settle the claims at this time.

### 1.      Defendants Contest the Claims of Misrepresentation

As set forth above, Defendants argue that Lead Plaintiff cannot prove that Defendants misrepresented to investors the risk of investing in MBS and swaps.   Defendants maintained that they had no duty to characterize or quantify the risks in those holdings, and, because Defendants disclosed their investment in MBS and swaps, including specifying the notional value of those investments, the Class was aware of the investments and must bear the risk for at least a portion of the losses attributable to those securities.   There is a material chance that these arguments could be successful on the motions to dismiss, which have been filed, or that they would resonate with a jury.

### 2.      Defendants Have Viable Loss Causation Defenses

Defendants' loss causation defenses also present substantial risk.   Defendants contend that the Fund's NAV decline resulted not from any purported misstatements or omissions but from an unprecedented, world-wide credit crisis and resulting panic that was unforeseen by government officials, economists, and the Fund's portfolio managers.   Although Lead Plaintiff and his experts have persuasive arguments to the contrary, this defense, if accepted, could cause a substantial reduction in the amount of recoverable damages.   *See, e.g., In re State Street Bank and Trust Co. Fixed Income Funds Inv. Litig.*, No. 08-8235, 2011 WL 1206070, at *10

(S.D.N.Y. Mar. 31, 2011) (dismissing claims for failure to plead loss causation, ruling that defendants' alleged misconduct did not cause NAV increases.)

### 3. The Amount of Damages Is Vulnerable to Findings that Early Statements Are Not Misleading

Lead Plaintiff also faced a material risk that a jury could find that Defendants issued false statements only during the end of the Class Period. Defendants maintained that the Fund did not invest heavily in the allegedly risky investments until late in the Class Period. Indeed, Defendants assert that the Class Period begins much later than proposed in the Complaint. If made, such a finding would cut substantially the Class's recoverable damages.

### 4. The Amount of Damages Is Susceptible to Findings that Losses Were Linked to Appropriate Investments

Defendants claim that a large percentage of losses in the Fund were attributable to corporate bond investments to which Lead Plaintiff does not link any misrepresentations or omissions. If true, Lead Plaintiff's estimated damages could be reduced significantly. Damages may be further reduced to the extent that only a *portion* of the investments in MBS and swaps were inappropriate because the Funds were authorized to invest in a reasonable percentage of these vehicles.

### 5. Defendants' Pending Motions Could Be Decided Against the Class

Pending before this Court are Defendants' motions to dismiss. Lead Plaintiff believes that his Complaint would be upheld, at least in part. Still the risk that these motions could be decided against Lead Plaintiff was certainly a factor weighing in favor of settlement.

**C.     The Value of an Immediate Recovery Outweighs the Possibility of Future Relief after Protracted and Expensive Litigation**

As this Court is aware, litigation of a complex securities class actions, such as this case, often takes years, and the result is uncertain.  By contrast, the proposed $47.5 million cash Settlement provides the Class with immediate, guaranteed, substantial relief.  *See Lucas,* 234 F.R.D. at 694.  The interest in avoiding continuing complex litigation justifies accepting the Settlement.  *Wilkerson*, 171 F.R.D. at 288.  The question of whether a proposed settlement is fair, reasonable, and adequate necessarily requires a judgment and evaluation by the attorneys for the parties based upon a comparison of "the terms of the compromise with the likely rewards of litigation."  *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) (quoting *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry v. Anderson*, 390 U.S. 414, 424-25 (1968)).  Here, although Lead Plaintiff believes that the Class claims are meritorious, Lead Counsel recognize the significant risks and expense necessary to further prosecute Lead Plaintiff's claims against Defendants through motion practice, trial and subsequent appeals, as well as the inherent difficulties and delays complex litigation like this entails.

In considering whether to enter into the Settlement, Lead Plaintiff weighed the value of an immediate settlement against the prospect that significant proceedings remained ahead, including additional discovery, class certification briefing, summary judgment briefing, *Daubert* motions, trial preparation and, of course, a trial.  Lead Plaintiff also considered the risks inherent in litigating a securities class action through trial, and the particular risks at issue in this Action as further detailed above.

Considering all of these factors, the value of an immediate recovery outweighs the possibility of future relief.

**D.      The Parties and Their Counsel Have Judged the Settlement as Fair and Reasonable**

"Counsels' judgment as to the fairness of the agreement is entitled to considerable weight." *Lucas,* 234 F.R.D. at 695 (quoting *Marcus v. Kansas Dep't. of Revenue,* 209 F. Supp. 2d 1179, 1183 (D. Kan. 2002)); *Wilkerson*, 171 F.R.D. at 288-289.  Lead Plaintiff's Counsel, all of whom have extensive experience with class action litigation and securities actions in particular, have determined that the proposed settlement is fair and reasonable.

The proposed Settlement of $47.5 million represents a very meaningful recovery of the damages suffered by the Class and is well within the range of what is considered fair, reasonable and adequate. With the diligent assistance of Financial Markets Analysis, Lead Counsel have estimated the Class's likely recovery at trial, taking into consideration certain defense arguments that may have been credited by a jury relating to liability periods, how to credit sales, permissible levels of swap and MBS investments, and discounts for corporate bond losses and losses attributable to general market forces.  Based on this analysis, Lead Counsel estimate that the Settlement provides a recovery in the range of 24% to 29% of Lead Counsel's estimate of their most realistic damages analyses pursuant to Sections 11 and 12 of the 1933 Act, respectively. This is a very favorable result.  *See, e.g., In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, No. 02 MDL 1484, 2007 WL 313474, at *10 (S.D.N.Y. Feb. 1, 2007) (finding that a recovery representing 6.25% of damages was "at the higher end of the range of reasonableness of recovery in class actions securities litigations"); *In re Cendant Corp. Sec. Litig.*, 264 F.3d 201, 242 & n.22 (3d Cir. 2001) (approving settlement that amounted to 9.25 % of total damages, and citing studies showing average recoveries in securities fraud litigation ranging from 9-14 % of total damages).

The proposed Settlement also far exceeds the median settlement amount in securities class actions.  Approximately 80% of securities class actions settled during the 15-year period after passage of the PSLRA settled for less than $25 million.  Ellen M. Ryan and Laura E. Simmons, *Securities Class Action Settlements:2010 Review and Analysis,* at 3 (Cornerstone Research 2011).  Additionally, the median settlement for class actions asserting claims under Sections 11 or 12(a)(2) of the 1933 Act, but not Section 10(b) of the Exchange Act, was $3.6 million.  *Id.* at 9.

In light of the substantial recovery to the Class, the arm's-length nature of the negotiations, the involvement of an independent and highly experienced mediator, and the participation of sophisticated counsel throughout the litigation, a finding that the proposed Settlement is sufficiently fair, reasonable and adequate to justify dissemination of the Notice to the Class and the scheduling of a final approval hearing is more than justified.  Lead Plaintiff respectfully urges the Court to grant preliminarily approval.

## IV.   CERTIFICATION OF THE CLASS IS PROPER AND NECESSARY

At the hearing on final approval of the Settlement, the Court will be asked to grant final approval to the Settlement on behalf of a settlement class.  For that reason, it is appropriate for the Court to consider, at the preliminary approval stage, whether certification of the Class pursuant to Fed. R. Civ. P. 23(a) and (b)(3) is appropriate.  *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); *DG ex rel. Stricklin v. Devaughn,* 594 F.3d 1188, 1194 (10th Cir. 2010).  Although class action requirements must be met when certifying a settlement class, the settlement must also be taken into account.  *Amchem,* 521 U.S. at 619.  The Court need not decide whether plaintiffs "have stated a cause of action or will prevail on the merits, but rather

whether the requirements of Rule 23 are met." *Shook v. El Paso County*, 386 F.3d 963, 971

(10th Cir. 2004) (quoting *Anderson v. City of Albuquerque*, 690 F.2d 796, 799 (10th Cir. 1982));

*Devaughn,* 594 F.3d at 1194.  Ultimately, class certification determinations are within the broad

discretion of the Court.  *In re Motor Fuel Temperature Sales Practices Litig.*, 258 F.R.D. at 674.

The Parties request certification for settlement purposes of the following Class:

> All persons and entities who purchased or otherwise acquired shares of the Core Bond Fund during the Class Period and who were damaged thereby.  Excluded from the Class are Defendants; Oppenheimer's Officers and Directors; members of Defendants' immediate families; Defendants' legal representatives, heirs, successors, or assigns; any entity in which Defendants have or had a controlling interest; any mutual fund or account managed by OFI or its affiliates (including without limitation "funds of funds") that owned shares of Core Bond Fund; and any 529 College Savings Plan.  Also excluded from the Class are any proposed Class Members who properly exclude themselves by filing a valid and timely request for exclusion in accordance with the requirements set forth in the Notice.

> "Class Period" means the period from April 30, 2007 through December 31, 2008, inclusive. *See* Stipulation ¶¶ 1(d); (e).

The requirements of Rule 23(a) are satisfied because:  (i) the Class is so numerous that

joinder of all members is impracticable; (ii) there are questions of law and fact common to the

Class; (iii) Lead Plaintiff's claims are typical of the claims of the Class; and (iv) Lead Plaintiff

and Lead Counsel will fairly and adequately represent the interests of the Class.  Additionally,

Rule 23(b)(3) is satisfied because questions of law and fact common to the class predominate

over individual questions, and a class action is superior to other methods of adjudicating the

controversy.

A.      **The Class Meets the Requirements of Rule 23(a)**

1.      **The Proposed Class Is so Numerous as to Make Joinder Impracticable**

The Tenth Circuit does not prescribe any set formula to satisfy the numerosity element, nor has it said numerosity may be presumed by a specific number of class members.  *McNeely,* 2008 WL 4816510, at *5; *Treviso v. Adams,* 455 F.3d 1155, 1162 (10th Cir. 2006).  Instead, the Court is granted wide latitude in making that determination.  *Id.*  Based on data produced by Defendants, there are tens-of-thousands of members of the Class and likely more, and the Class is of sufficient size and geographical dispersion that joinder of all Class Members is impracticable, thus satisfying Rule 23(a)(1).

2.      **There Are Questions of Law and Fact Common to the Class**

Commonality is not required for each issue that will be raised in the case.  *McNeely,* 2008 WL 4816510, at *6; *Realmonte v. Reeves,* 169 F.3d 1280, 1285 (10th Cir. 1999).  A single question of law or fact common to the Class suffices.  *Devaughn,* 594 F.3d at 1195.

Among the questions of law and fact common to the Class are whether the 1933 Act was violated by Defendants' acts as alleged; whether statements made to the investing public in the Registration Statements and Prospectuses misrepresented or omitted material facts; whether the Fund's investment policies were violated; and whether Defendants' acts caused the alleged damages and, if so, what is the proper measure thereof.

These are typical of the issues that have been routinely found to present "common questions" of law or fact compelling certification of securities class actions.  *See, e.g., Realmonte,* 169 F.3d at 1286 (finding those who bought stock through different channels were influenced by defendants' deceptions in the same way).  The same facts giving rise to Lead

Plaintiff's claims also give rise to absent Class Members' claims. Absent Class Members would have to prove identical facts and answer identical questions if they pursued claims individually. Accordingly, the commonality requirement of Rule 23 is satisfied.

### 3.      Lead Plaintiff's Claims Are Typical of the Claims of the Class

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The typicality requirement ensures that absent class members' interests are adequately represented through the alignment of interests. *Lane v. Page,* No. CIV 06-1071 JB/ACT, 2011 WL 395472, at *12 (D. N.M. Jan. 10, 2011). Like the commonality requirement, factual differences between class members will not defeat a finding of typicality if the class members share the same legal theory; their claims need not be identical. *Id.* at *12; *Devaughn,* 594 F.3d at 1198; *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988).

Here, the claims of all Class Members arise from Defendants' allegedly uniform omissions and representations contained in Registration Statements and Prospectuses, which allegedly injured the Class Members in the same or similar manner. Accordingly, Rule 23(a)(3)'s typicality requirement is satisfied.

### 4.      Lead Plaintiff and Lead Counsel Have and Will Fairly and Adequately Represent the Interests of the Class

The Tenth Circuit has identified two factors relevant to the adequacy of representation requirement: (i) whether any conflicts exist between plaintiffs, and their counsel, and the other class members; and (ii) whether the named plaintiffs and their counsel will vigorously prosecute the action on behalf of the Class. *Rutter & Wilbanks Corp.*, 314 F.3d at 1187-88; *Lane,* 2011 WL 395472, at *13. The inquiry focuses on whether class counsel is qualified, experienced and able to handle the litigation; whether the class representative has a sufficient interest in the

outcome of the action to ensure vigorous advocacy; and whether there are any antagonistic interests between named parties and the class or their counsel.[12]  *See McNeely,* 2008 WL 4816510, at *7; *see also Amchem Prods.*, 521 U.S. at 625.

Lead Plaintiff's interests here are fully aligned with those of absent Class Members, because he brings the same claims for similar remedies under the same legal theories.  There are no actual or potential conflicts of interest between the Lead Plaintiff and the Class Members. Lead Plaintiff understands and is prepared to fulfill his duties to the Class.  Accordingly, the interests of Lead Plaintiff and the Class Members in recovering their damages are well aligned.

Moreover, Lead Plaintiff has retained highly capable counsel with extensive experience in prosecuting numerous securities class actions on behalf of injured investors throughout the United States.  Lead Counsel are capable of, and committed to, prosecuting this action vigorously on behalf of the Class.[13]  The Lead Plaintiff and Lead Counsel will fairly and adequately represent the Class's interests.

### B.      The Proposed Settlement Class Satisfies the Requirements of Rule 23(b)(3)

A class may be certified under Rule 23(b)(3) if "the court finds that the questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient

---

[12] Lead Counsel have ensured there were no conflicts in the settlement amount allocation process by appointing separate counsel for each of the Classes.  In any event, allocation of settlement proceeds between class members is long-recognized as an appropriate way to reflect comparative strengths of claims and it need only have a reasonable, rational basis. *See Lucas*, 234 F.R.D. at 695.

[13] *See* résumés of Labaton Sucharow LLP, Hagens Berman Sobol Shapiro LLP and The Shuman Law Firm, attached as Exhibit A, B, and C, respectively, hereto.

adjudication the controversy."  Fed. R. Civ. P. 23(b)(3); *Amchem,* 521 U.S. at 615-616.  Both criteria are met here.

### 1.      Common Questions of Law and Fact Predominate

Predominance is a test that is "readily met" in securities cases.  *Id.* at 625.  Issues subject to generalized proof by the class predominate over issues where individualized proof will be necessary.  *McNeely,* 2008 WL 4816510, at *6.  A class is sufficiently cohesive to warrant certification if any individual issues that exist are of a lesser significance than the many common issues in the litigation.  *Id.*; *Amchem,* 521 U.S. at 623.

The common course of omissions and misrepresentations alleged in this Action satisfies the predominance requirement. Defendants' alleged activities affected all Class Members in the same or similar manner, and the focus will be on Defendants' conduct, not the Lead Plaintiff's and the Class Members' conduct.  For each claim, Lead Plaintiff and Class Members will have to prove the central Section 11 and Section 12 elements at issue, whether or not this case proceeds as a class action.  For the Section 11 claim, the predominating common issue will be whether the registration statements contained a material misstatement or omission when they became effective.  15 U.S.C. § 77k(a).  For the Section 12 claim, the predominating common issue will be whether the prospectuses include "an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in light of the circumstances under which they were made, not misleading."  15 U.S.C. § 77l(2).  For the Section 15 claim, the predominating common issue will be whether certain Defendants exercised actual power or control over primary violators.  15 U.S.C. § 77o.

None of these claims require a showing of individual reliance.  *See Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1541 (8th Cir. 1996) ("[a] claim under § 11 does not require proof of reliance, causation, or scienter, but only materiality and damages"); *Gustafson v. Alloyd Co.*, 513 U.S. 561, 582 (1995) (observing that Section 12 imposes liability without "proof of either fraud or reliance").  Under these circumstances, it is difficult to discern any non-common questions other than individual damages, which depend only upon the quantity of, and the prices at which, each Class Member purchased the Fund.  Such damages issues do not weigh against finding predominance.

## 2.      A Class Action Is a Superior Method of Adjudication

Rule 23(b)(3) enumerates four factors considered in determining whether a class action is superior:  (i) the interest of the members of the class in controlling individual actions; (ii) the extent and nature of ongoing litigation; (iii) the desirability or undesirability of concentrating litigation of the claims in a single forum; and (iv) the challenges of managing the class action. Fed. R. Civ. P. 23(b); *Amchem,* 521 U.S. at 616; *McNeely,* 2008 WL 4816510, at *9.

Applying the Rule 23(b)(3) factors, the Court should find class treatment to be superior to other methods of pursuing the Class's claims.  First, Class Members have little interest in individually controlling the prosecution of the securities claims against the Defendants given the expense and complexity of litigating such claims.  Where individual recovery may be small, class members may have no incentive to individually pursue their claims.  *See id.* at *9.  Indeed, class actions are well-suited for the "vindication of 'the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.'" *Amchem*, 521 U.S. at 617 (quoting Rule 23 Advisory Committee Notes).  Pooling resources into

a single action weighs in favor of certification.  To the extent any class member does elect to prosecute the claims alone,[14] Rule 23(c)(2)(B)(v) would permit that member to opt-out of this action.  *See*, *e.g.*, *Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*, 209 F.R.D. 159, 168 (C.D. Cal. 2002).  Manageability does not apply, because in deciding whether to certify a settlement class, the Court need not inquire whether the case, if tried, would present difficult management problems.  *Amchem*, 521 U.S. at 620.

Moreover, the Tenth Circuit has recognized that federal securities claims are appropriately resolved through class actions.  *Lane,* 2011 WL 395472 at *16 (citing *Lerner v. Haimsohn,* 126 F.R.D. 64, 65 (D. Colo. 1989); *T.J. Raney & Sons, Inc. v. Fort Cobb, Okla. Irrigation Fuel Auth.,* 717 F.2d 1330 (10th Cir. 1983)).  Indeed, the Tenth Circuit has stated that, as relates to federal securities cases, "in doubtful class actions certification of the class is to be favored."  *Alvarado Partners, L.P. v. Mehta,* 130 F.R.D. 673, 676 (D. Colo. 1990) (quoting *Esplin v. Hirschi,* 402 F.2d 94, 101 (10th Cir. 1968)).

## V.    THE COURT SHOULD APPROVE THE FORM OF THE NOTICE AND PLAN FOR NOTIFYING THE CLASS

The Court should also approve the form and content of the proposed Notices and Publication Notice.  *See* Exhibits A-1, A-2 and A-5, annexed to the proposed Preliminary Approval Order and Stipulation.  Rule 23(c)(2) requires notice of the pendency of the class action to be "the best notice practicable under the circumstances."  Fed. R. Civ. P. 23(c)(2). "Such notice is essential in order to ensure that class members who desire to pursue their own

---

[14] Individual actions have been brought against Defendants.  *See, e.g., Sodetz v. OppenheimerFunds, Inc.*, et al., No. 10-cv-50183 (N.D. Ill.); *Confoid, et al. v. OppenheimerFunds, Inc.*, et al., No. 10-cv-50157 (N.D. Ill.).  Plaintiffs in such actions will be mailed a Notice and advised of their rights.

claims individually have the opportunity to exercise their right to opt out of the class." *Gottlieb v. Wiles*, 11 F.3d 1004, 1012 (10th Cir. 1993), *overruled on other grounds*, *Devlin v. Scardelletti*, 536 U. S. 1, 6 (2002).  Actual notice is not required.  *In re Motor Fuel*, 258 F.R.D. at 676.

Consistent with Rules 23(c)(2)(B) and 23(e)(1), the notices are written in clear, straightforward language.  *McNeely,* 2008 WL 4816510, at *14; *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 175-76 (1974).  The mailed Notices concisely provide the following information:  (i) the nature of the Action; (ii) the definition of the Class and why this is a class action; (iii) the claims and defenses; (iv) the terms of the Settlement and how to object to any aspect of it; (v) that a Class Member may enter an appearance through counsel; (vi) that the Court will exclude from the Class anyone who requests exclusion; (vii) the time and manner for requesting exclusion; (viii) the scope of the release; (ix) the binding effect of a class judgment on Class Members under Rule 23(c)(3); and (x) the request for attorneys' fees and reimbursement of expenses.  *See e.g. Horton v. Leading Edge Mktg.*, No. 04-cv-00212-PSF-CBS, 2007 WL 2472046 (D. Colo. Aug. 28, 2007).

Furthermore, the mailed Notices explain the basis of recovery under the Settlement, and what actions must be taken to claim any amount due.  Information is provided to assist the recipients of the Notices in determining whether they are a Class Member, and if so how their payment will be calculated under the Distribution Plan.  The Notices set forth the reasons for settlement, including specific risks that impacted the decision to settle, and explain how each Class Member can object to the Settlement or request exclusion from the Class in order to pursue their own claims individually.  They inform Class Members that Lead Counsel will be seeking attorneys' fees up to 18.5% of the Settlement Fund, in addition to reimbursement of litigation

expenses.  It further sets forth that Lead Counsel will seek reimbursement for Lead Plaintiff of the lost wages and expenses incurred by Lead Plaintiff related to representation of the Class. Finally, the Notice explains the fairness hearing and provides the date and location for the hearing.

The proposed claims administrator, Epiq Class Action & Claims Solutions, Inc. ("Epiq") will carry out the notice program.  Epiq is an experienced settlement and claims administrator. Individual notices will be mailed to those Class Members who purchased their Core Bond Fund shares directly from Oppenheimer, and those notices will be accompanied by a detailed Record of Fund Transactions listing the Core Bond Fund shares the Class Member acquired and sold between April 30, 2007 and December 31, 2008.  These Class Members will not be required to complete a Claim Form in order to receive a distribution.

Oppenheimer does not possess name, address and transaction information for Class Members who purchased their Core Bond Fund shares from a broker or other intermediary separate from Oppenheimer.  For this subset of the Class, the Claims Administrator will seek the information from third-party brokers identified by Oppenheimer.  These third-party brokers are directed by the proposed Preliminary Approval Order to provide name, address and transaction information to the Claims Administrator by July 1, 2011.  The Claims Administrator will then mail individual notice and a Record of Fund Transactions to these Class Members, who will not be required to complete a Claim Form.  For those Class Members for whom the Claims Administrator has been unable to obtain transaction data (or obtains only incomplete transaction data), the Claims Administrator will mail an individual Notice and a Claim Form, which must be completed.

In addition to individually mailed notice, the Publication Notice will be published once in *Investor's Business Daily* and transmitted over PRNewswire.

Courts have found that notice substantially equivalent to that provided for in this Settlement constituted the "best notice practicable under the circumstances." *E.g. In re Qwest Commn'c Int'l., Inc. Sec. Litig.*, 625 F. Supp. 2d 1133, 1137 (D. Colo. 2009); *Ashley v. Regional Transp Dist. & Amalgamated Transit Union Div. 1001 Pension Fund Trust*, No. 05-cv-01567-WYD-BNB, 2008 WL 384579, at *4 (D. Colo. Feb. 11, 2008) ("the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort if necessary"). The Notice also satisfies the separate disclosure requirements imposed by the PSLRA. *See* 15 U.S.C. § 78u-4(a)(7).

The notices and notice procedures satisfy the requirements of Rule 23 and due process, and should be approved by the Court.

## VI.    PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval of the Settlement, the Court must set a final approval hearing date, dates for mailing the Notices and publication of the Publication Notice, and deadlines for objecting to or seeking exclusion from the Settlement and filing papers in support of the Settlement. Lead Plaintiff proposes the following schedule:

| Date | Event |
|------|-------|
| 5 business days from prelim. approval | Letter sent to third-party broker-dealer intermediaries. |
| July 1 | Broker-dealer intermediaries to provide Class Member information. |
| July 15 | Notices mailed to all Class Members. |

| July 29 | Publication Notice published in *Investor's Business Daily* and transmitted over PRNewswire. |
| July 29 | Lead Counsel file motion for approval of Settlement and for approval of attorneys' fees and costs and Lead Plaintiff compensation, including a declaration of proof of mailing and publishing notice. |
| August 31 | Requests for exclusions and objections due. |
| September 15 | Lead Counsel file reply papers in support of Settlement and fees. |
| September 30 | Final fairness hearing. |
| October 30 | Claim Forms due. |

## VII.   CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court grant this unopposed Motion and:  (i) preliminarily approve the Settlement; (ii) certify the Class for purposes of settlement only and appoint Class Counsel and the Class Representative; (iii) approve the form and method for providing notice to the Class; (iv) schedule a final settlement hearing and other events; and (v) enter the proposed Preliminary Approval Order submitted herewith.

Dated:  May 19, 2011                                    */s/ Kip B. Shuman*

**THE SHUMAN LAW FIRM**
Kip B. Shuman
Rusty Glenn
885 Arapahoe Avenue
Boulder, Colorado  80302
Telephone:  (303) 861-3003
Facsimile:  (303) 484-4886
E-Mail:  kip@shumanlawfirm.com

*Liaison Counsel for the Class*

**LABATON SUCHAROW LLP**
Jonathan M. Plasse
Christopher J. Keller
Nicole M. Zeiss
Joshua Crowell
Erin Rump
140 Broadway
New York, New York  10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

*Lead Counsel for the Class*

**HAGENS BERMAN SOBOL SHAPIRO LLP**
Steve W. Berman
Sean R. Matt
1301 Fifth Avenue, Suite 2900
Seattle, Washington  98101
Telephone:  (206) 623-7292
Facsimile:  (206) 623-0594

*Additional Class Counsel*